## State of Vermont v. Peter S. Catsam

[534 A.2d 184]

No. 85-522

Present: **Allen, C.J., Hill, Peck and Gibson, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed August 14, 1987

*Shelley Hill*, Windsor County State's Attorney, and *M. Patricia Zimmerman*, Law Clerk (On the Brief), White River Junction, for Plaintiff-Appellee.

*Charles S. Martin* and *Susan Dunbar*, Law Clerk (On the Brief), of *Martin and Paolini*, Barre, for Defendant-Appellant.

**Hill, J.** The defendant, Peter Catsam, appeals his conviction of sexual assault in violation of 13 V.S.A. § 3252(3). We reverse and remand for a new trial because of the improper introduction at trial of prejudicial expert testimony.

The complainant, S. S., was ten years old at the time of the alleged sexual assault. The defendant had known the complainant's mother for about three years before the alleged incident, and had carried on an intimate relationship with her up until approximately the time of the reports by S. S. of sexual assault. The defendant had a good relationship with the complainant to the point where, according to the child's mother, he acted in many ways like her father. Defendant would often help to put S. S. to bed and tell her bedtime stories. It was during one of these occasions that the alleged sexual assault took place.

S. S. did not report the incident until approximately six months after it allegedly occurred. She never saw a doctor concerning the alleged assault, and there was no physical evidence to corroborate her allegations.

The prosecution called three witnesses at the trial. The complainant testified about the assault, and was the only source of direct testimony about the assault since there were no other witnesses. The complainant's mother testified that defendant had been in complainant's bedroom trying to help her get to sleep on the night of the alleged assault. A mental health clinician testified as an expert for the State as well. The defendant testified and denied the allegations, using fabrication of the charges as his primary theory of defense.

Defendant alleges three evidentiary errors below: (1) introduction of improper expert testimony on the truthfulness of child sexual assault victims; (2) improper exclusion of his cross-examination of the complainant regarding a prior sexual assault against her by a third party; and (3) improper admission of evidence of his prior sexual assaults on the complainant.

## I.

Defendant's first claim of error is that expert testimony that children who suffer from post-traumatic stress disorder (PTSD) do not fabricate stories about sexual assault was improperly admitted. The prosecution introduced the testimony of Sharon Termini, a mental health outpatient clinician. The court found that she was qualified to give expert testimony because of her experience treating child sexual assault victims through her work as a social worker and clinician. Ms. Termini testified that, over a two and one-half year period, she had worked with approximately 300 sexually abused children. She testified that all the sexually abused children that she had worked with suffered from PTSD.

Ms. Termini testified that PTSD is a profile of a child who has been sexually abused and includes both emotional and physical characteristics. According to her testimony, children displaying symptoms of this syndrome are generally anxious, depressed, guilt-ridden, and withdrawn. She also testified that it is common with children who have been sexually abused to delay reporting the abuse.

The prosecutor then asked the expert the following question: "Based on your training and your familiarity with this syndrome, would you say that children generally tend to tell the truth about sexual abuse?" Defense counsel objected, but was overruled. The prosecutor then rephrased the question several times, but never got an answer from the expert because of repeated defense objections. Finally, the prosecutor asked: "Do children make up stories about sexual abuse as part of the syndrome that you describe?" The expert answered: "Not in my experience. No." Ms. Termini then testified that based on her training, experience, and evaluation of the complainant, it was her opinion that the child suffered from PTSD.

The defendant does not challenge the qualifications of the expert, the admission of her testimony relating to the emotional and

physical symptoms of PTSD, or her opinion that the complainant suffered from the disorder. His challenge is directed instead at the expert's opinion that sufferers of the disorder generally do not make up stories about sexual abuse. He contends that this testimony constitutes an expert opinion on the credibility of the complaining witness, which usurps the jury's role of determining the credibility of witnesses, thereby depriving him of a fair trial.

■ We first address the admissibility of profile or syndrome evidence in child sexual assault cases because it is an issue of first impression in Vermont. The rule governing the admission of expert testimony provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

V.R.E. 702. Courts with near unanimity have recognized that this type of expert testimony can "assist [the jury] to understand the evidence," *id.*, introduced in a child sexual assault case. *State* v. *Lindsey*, 149 Ariz. 472, 473-74, 720 P.2d 73, 74-75 (1986); *State* v. *Kim*, 64 Haw. 598, 608, 645 P.2d 1330, 1338 (1982); *State* v. *Myers*, 359 N.W.2d 604, 609-10 (Minn. 1984); *State* v. *Middleton*, 294 Or. 427, 436-37, 657 P.2d 1215, 1220 (1983); *Commonwealth* v. *Baldwin*, 348 Pa. Super. 368, 377-78, 502 A.2d 253, 257-58 (1985). The unique psychological effects of sexual assault on children place the average juror at a disadvantage in understanding the behavior of the victim. *Middleton*, 294 Or. at 436-37, 657 P.2d at 1220. The confusion, shame, guilt, and fear that often result from such abuse may cause a "victim to react and behave in a different manner from many other crime victims, especially when the sexual abuse victim is forced to testify to the acts in open court." *Baldwin*, 348 Pa. Super. at 377, 502 A.2d at 258. Jurors who themselves have never experienced such emotions may be better able to assess the credibility of the complaining witness with the benefit of a better understanding of the emotional antecedents of the victim's conduct provided by the expert testimony.

Given the demonstrated usefulness that such evidence can have in assisting the jury to assess the credibility of the complaining child witness, we join the majority of courts that have concluded that it is within the trial court's discretion to admit such evidence

in appropriate circumstances.[1] See *Poyner* v. *State*, 288 Ark. 402, 405-06, 705 S.W.2d 882, 884 (1986); *Kruse* v. *State*, 483 So.2d 1383, 1385 (Fla. Dist. Ct. App. 1986); *Kim*, 64 Haw. at 608-10, 645 P.2d at 1338-39; *Myers*, 359 N.W.2d at 609-10; *State* v. *Geyman*, 729 P.2d 475, 479 (Mont. 1986); *Smith* v. *State*, 100 Nev. 570, 572-73, 688 P.2d 326, 327 (1984); *Middleton*, 294 Or. at 436-37, 657 P.2d at 1221; *Baldwin*, 348 Pa. Super. at 374-79, 502 A.2d at 257-58.

The challenged expert testimony, however, went beyond the psychological and emotional profile of PTSD sufferers and an opinion as to whether the testifying complainant suffers from the disorder; the expert testified regarding the tendency of PTSD sufferers to tell the truth about incidents of sexual abuse. The State argues that that testimony comes within the profile evidence rule, since it can aid the jury's assessment of the complainant's credibility, and does not constitute a direct comment on the credibility of the complainant. We disagree.

When viewed as a whole, the testimony of Ms. Termini was tantamount to a direct comment that the complainant was telling the truth about the alleged sexual assault for which the defendant was charged. By testifying first that sufferers of PTSD generally do not fabricate claims of sexual abuse, and then that the complainant suffers from PTSD, her testimony left one clear and unmistakable inference to be drawn: the complainant would not fabricate this allegation. The fact that the expert does not testify directly to the ultimate conclusion does not ameliorate the difficulty with the opinion on credibility. Other courts have concluded, as do we, that expert testimony that child victims of sexual abuse generally tend not to fabricate incidents of abuse is the equivalent of a direct comment on the credibility of the testifying complainant. See *Lindsey*, 149 Ariz. at 474, 720 P.2d at 75 (testimony that " 'most people in the field feel that it's a very small proportion [of incest victims] that lie' " is "tantamount to expert evidence on the question of guilt or innocence"); *State* v. *Myers*, 382 N.W.2d 91, 92-93 (Iowa 1986) (testimony that "[s]tatistically . . . children have not lied in [the area of child sexual abuse]"

---

[1] In addition to the requirement that the expert testimony "shed light on a subject matter that is beyond the ken of the average lay person," *State* v. *Onorato*, 142 Vt. 99, 104, 453 A.2d 393, 395 (1982), the court must determine that the witness is qualified to give the opinion, *id.*, and that the testimony is relevant. *Middleton*, 294 Or. at 437, 657 P.2d at 1221.

and that "it is my opinion that it is very rare for a child to lie about [sexual abuse]" is "comparable to telling the jury that the complainant would not lie about matters concerning sexual abuse"); see also McCord, *Expert Psychological Testimony About Child Complainants in Sexual Abuse Prosecutions: A Foray into the Admissibility of Novel Psychological Evidence*, 77 J. Crim. L. & Criminology 1, 53 (1986) ("Expert opinion that it is rare for children to fabricate or fantasize claims of sexual abuse . . . vouches for the complainant's credibility because it concludes that the complainant is almost certainly telling the truth.").

Once the false distinction is recognized between the challenged expert testimony in this case and an expert's direct comment on the credibility of a complaining witness, review of the court's admission of this evidence is simplified. Although the admission of expert testimony is within the discretion of the trial court, *Onorato*, 142 Vt. at 104, 453 A.2d 395, that discretion is not boundless. The critical inquiry with respect to the admissibility of expert testimony under Rule 702 is whether such testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." V.R.E. 702. Truthfulness is generally not a "fact in issue," except in limited circumstances such as perjury prosecutions. Therefore, expert testimony on the truthfulness of child sexual abuse victims is not admissible unless it will assist the jury "to understand the evidence." *Id.*

In *State v. Bubar*, 146 Vt. 398, 505 A.2d 1197 (1985), this Court expressed concern that expert testimony on rape trauma syndrome tends to lend "an improper 'aura of special reliability and trustworthiness' to the complainant's testimony . . . ." *Id.* at 401, 505 A.2d at 1199 (quoting *State v. Saldana*, 324 N.W.2d 227, 230 (Minn. 1982)). The same concern prompts us in this case to hold that expert testimony on the truthfulness of child victims of sexual abuse is inadmissible. Since this type of evidence may unduly influence the jury's judgment with regard to the truthfulness of the complaining witness, it is not admissible.

Furthermore, this error cannot be eradicated on the ground that it was harmless. As we noted in *State v. Hamlin*, 146 Vt. 97, 499 A.2d 45 (1985), "[h]armless error analysis requires the reviewing court to inquire if, absent the alleged error, it is clear beyond a reasonable doubt that the jury would have returned a verdict regardless of the error. Thus, analysis under the harmless error

doctrine focuses on the evidence of guilt present in the record." *Id.* at 106, 499 A.2d at 52 (citations omitted). Furthermore, "[t]he burden is cast on the party not prejudiced by the error to show that it was harmless." *State* v. *Percy*, 146 Vt. 475, 485, 507 A.2d 955, 961 (1986) (citing *Chapman* v. *California*, 386 U.S. 18, 24 (1967)).

While admission of this type of expert testimony might be harmless in a case in which there was ample extrinsic evidence of guilt, that is not the case here. In this case, the State introduced no physical or strong circumstantial evidence of guilt. Furthermore, the State took the opportunity in closing argument to prompt the jury to consider the expert's testimony in assessing the complainant's credibility. Under these circumstances, the prejudicial nature of the testimony is clear, and "it cannot be said beyond a reasonable doubt that the jury would have convicted even in the absence of the error." *Lindsey*, 149 Ariz. at 477, 720 P.2d at 78. Accordingly, defendant is entitled to a new trial.

While it is not our usual practice to do so, we will now discuss defendant's two remaining arguments because they present issues that are likely to arise in a new trial. See *State* v. *Carmody*, 140 Vt. 631, 637, 442 A.2d 1292, 1295 (1982).

## II.

Defendant's second claim of error is that he was improperly barred from cross-examining the complaining witness regarding a prior sexual assault[2] that had been committed upon her by a third party for which that third party had been convicted. Defendant maintains that the intended purpose of this line of questioning was to provide evidence of an alternative source of the PTSD. The trial court barred this line of cross-examination on the basis of the Rape Shield Law, 13 V.S.A. § 3255.[3] Defendant maintains that the court's application of the Rape Shield Law vi-

---

[2] E. F., a friend of the complainant's mother, pled guilty and was convicted on July 3, 1985, of committing a lewd and lascivious act upon the complainant. The information charged E. F. with committing the alleged offense sometime between mid-August and mid-September, 1984.

[3] The statute provides, in pertinent part:

> Evidence of prior sexual conduct of the complaining witness shall not be admitted; provided, however, where it bears on the credibility of the complaining witness or it is material to a fact at issue and its probative value outweighs its private character, the court may admit:

olated his right to be confronted with the witnesses against him, as guaranteed by the Sixth Amendment to the United States Constitution[4] and Chapter I, Article 10 of the Vermont Constitution. Alternatively, he argues that the statute can and should be interpreted by this Court to allow the proffered cross-examination, thus avoiding conflict between the statute and the constitutional rights in question. We address first defendant's statutory argument.

## A.

Defendant correctly notes that a statute should, if it reasonably can, be so construed as to avoid any conflict with the constitution. *Central Vermont Railway* v. *Department of Taxes*, 144 Vt. 601, 604, 480 A.2d 419, 421 (1984). Defendant's argument is that the evidence should be admissible under the provision of the Rape Shield Law which creates an exception to the general rule of exclusion for "[e]vidence of specific instances of the complaining witness' sexual conduct showing the source of origin of . . . disease; . . . ." 13 V.S.A. § 3255(a)(3)(B). According to defendant, PTSD is a "disease" within the meaning of the statute, and since the purpose of the proffered cross-examination was to show an alternative "source" of the syndrome, the evidence should be admissible.

Even if it is assumed, for purposes of this analysis, that PTSD is a "disease" within the meaning of § 3255(a)(3)(B), other additional requirements must be met before evidence of a complaining witness' prior sexual conduct is admissible under § 3255(a)(3). The statute allows admission of evidence which comes within the terms of the specifically enumerated exceptions only when the evidence: (1) "bears on the credibility of the complaining witness or . . . is material to a fact at issue"; *and* (2) "its

---

(A) Evidence of the complaining witness' past sexual conduct with the defendant;

(B) Evidence of specific instances of the complaining witness' sexual conduct showing the source of [sic] origin of semen, pregnancy or disease;

(C) Evidence of specific instances of the complaining witness' past false allegations of violations of this chapter.

13 V.S.A. § 3255(a)(3).

[4] The guarantees of the Sixth Amendment have been incorporated into the Fourteenth Amendment and therefore apply in state court proceedings. *Pointer* v. *Texas*, 380 U.S. 400, 406 (1965).

probative value outweighs its private character." 13 V.S.A. § 3255(a)(3).

While the evidence may have the minimum amount of logical relevance such that the evidence arguably "bears on the credibility of the complaining witness," *id.*, it is still necessary that the "probative value of the evidence outweighs its private character." *Id.* This Court held in *State* v. *Patnaude*, 140 Vt. 361, 376, 438 A.2d 402, 408 (1981), that the balancing test set up by § 3255(a)(3) is "synonymous with the traditional tests for legal relevance admissible generally in criminal and civil trials." Accordingly, the test is whether the probative value of the evidence outweighs its prejudicial impact, which in a sexual assault case derives from the "private character" of the evidence. *Id.* at 377, 438 A.2d at 409.

Defendant argues that our decision in *State* v. *Murphy*, 134 Vt. 106, 353 A.2d 346 (1976), establishes the clear probative value of this evidence, and hence its admissibility. In *Murphy*, a statutory rape case, the State introduced the testimony of the doctor who examined the complaining child following the alleged rape. The doctor described various contusions and cuts on the girl's body, including a contusion on her hymenal ring, and stated his opinion that the injuries were consistent with the girl's story of the occurrence. In rebuttal, the defendant proffered evidence through several witnesses that about one week before the alleged rape, the girl had been caught by her mother in a barn, with a girl and two boys, engaged in masturbation. The defendant offered this evidence "to show that some of the described injuries . . . could have been caused by activity other than the complained of rape." *Id.* at 111, 353 A.2d at 350. Reversing the ruling of the trial court, this Court held that defendant "was entitled to show that some, at least, of the injuries described to the jury could have been caused by another person, consistent with his denial of guilt, claim of alibi, and claim of prosecution for revenge. . . . The injuries were put in evidence against [him], and he was entitled to explain them, if he could." *Id.* at 111-12, 353 A.2d at 350.

In the instant case, the expert testimony regarding PTSD was introduced by the State to aid the jury's understanding of particularized behavioral characteristics of child victims of sexual crimes. Thus, unlike the evidence the defendant sought to rebut in *Murphy*, this evidence was not introduced and admitted for the purpose of supporting an inference of defendant's guilt. This

Court has previously recognized that trauma syndrome evidence is not admissible to support an inference of the defendant's guilt. See *Bubar*, 146 Vt. at 401, 505 A.2d at 1199. Such evidence is admissible solely for the purpose of aiding the jury's understanding of the victim's behavior.[5] Accordingly, the rebuttal evidence offered by defendant, unlike the rebuttal evidence in *Murphy*, is not directly probative of the ultimate issue of defendant's guilt: its probative value is limited to the question of the victim's credibility. Therefore, the substantial probative value of the evidence improperly excluded in *Murphy* is not present here.

Similarly, the cases cited by defendant from other jurisdictions, which have construed their rape shield statutes to allow evidence of prior sexual conduct of child victims for limited purposes, do not aid his position. In *Summitt* v. *State*, 101 Nev. 159, 697 P.2d 1374 (1985), *State* v. *Howard*, 121 N.H. 53, 426 A.2d 457 (1981), and *Commonwealth* v. *Black*, 337 Pa. Super. 548, 487 A.2d 396 (1985), the courts admitted, under varying theories, evidence of prior sexual conduct of the complaining witness for purposes of challenging that witness' veracity.[6] In the instant case—although the veracity of a testifying witness is always an issue—the defense did not seek to cross-examine her concerning the prior incidents in order to challenge her truthfulness. In its offers of proof at trial and in this appeal, defendant has consistently maintained that the purpose of the cross-examination was to show a possible alter-

---

[5] We note that given the limited purpose for which this evidence is admissible, it is appropriate for the court to, "upon request, . . . restrict the evidence to its proper scope and instruct the jury accordingly." V.R.E. 105.

[6] In *Summitt*, the court upheld the admissibility of evidence of a complaining witness' prior sexual conduct with a third party, on the theory that it could show that "she had had other experiences which could explain the source of her knowledge of the sexual activity she described in her testimony." *Summitt*, 101 Nev. at 163, 697 P.2d at 1377. Since this evidence could show that the complainant had the capacity to contrive a statutory rape charge, it was held to be admissible to test the accuracy and truthfulness of her testimony. *Id.* The same theory was used by the court in *Howard*, 121 N.H. at 61, 426 A.2d at 462, to support the admissibility of similar evidence.

In *Black*, the defendant offered evidence of prior sexual conduct of the complainant with a third party to show specific bias against and hostility toward the defendant and motive to seek retribution through false accusation. 337 Pa. Super. at 552-53, 487 A.2d at 398. The court held that the Pennsylvania rape shield law violated defendant's right to confrontation to the extent that it precluded the admission of this evidence to challenge the truthfulness of the complainant's testimony. *Id.* at 556-57, 487 A.2d at 400-01.

native source of the PTSD. While this may be characterized as an attack on the victim's general credibility, it is far from an attack on her truthfulness with respect to the ultimate issue.

Furthermore, the probative value of evidence of prior sexual conduct of a complaining child witness depends in large part on the availability of other evidence pertaining to the issue in question. As stated by one commentator:

> [I]n measuring probative worth under Rule 403 the judge cannot focus exclusively on the challenged evidence, but must look at other evidence already introduced or available to the proponent. Just as the probative worth of the evidence may decline when compared to the need for its use, so may that value increase when considered in connection with other evidence in the same or adjacent lines of proof. And on the other hand, the extent to which the value of the evidence is dependent upon other complicated lines of proof may increase the danger of confusion or the consumption of time. *In short, the balancing test of Rule 403 requires that the judge consider the proffered evidence against the background of all of the evidence in the case.*

22 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5214, at 272-73 (1978) (emphasis added); see also Advisory Committee Notes, Fed. R. Evid. 403 (In determining admissibility of evidence under Rule 403, a court can balance "the probative value of *and need for* the evidence against the harm likely to result from its admission.") (emphasis added).

For example, in *Black, supra*, the court interpreted the Pennsylvania rape shield law to permit, under appropriate circumstances, cross-examination of a complaining witness about prior sexual conduct to show specific bias against the defendant. *Black*, 337 Pa. Super. at 556-57, 487 A.2d at 400-01. In so holding, the court recognized that one of the factors to be considered in determining admissibility is "whether there are alternative means of proving bias or motive or to challenge credibility." *Id.* at 558, 487 A.2d at 401. The court also emphasized the "trial court's responsibility to limit repetitive *and* unnecessarily harassing cross-examination in all cases . . . ." *Id.* (emphasis added).

The *Black* court's reasoning is persuasive and directly applicable here. Although the trial court precluded defendant's counsel from cross-examining the complaining witness about the prior

sexual assault committed upon her, defendant was permitted to cross-examine the State's expert witness about whether, in her opinion, the prior assault might have been an alternative cause of the PTSD. Under these circumstances, the probative value of whatever evidence that could have been produced through cross-examination of the complaining witness was substantially diminished by the availability of alternative means of exploring the cause of the syndrome.

On the opposing side of the balance, the proffered evidence carries with it a substantial risk of prejudicial impact which derives from its "private character." While defendant is correct that the evidence is not offered to show unchastity, and no prejudice in the form of disrepute to the complainant's character will result from its admission, it does not follow that a prejudicial impact of another form will not result from its admission. The proffered cross-examination of the victim would be an invasion of her privacy. *People* v. *Arenda*, 416 Mich. 1, 12, 330 N.W.2d 814, 818 (1982). Moreover, the State has a legitimate and substantial parens patrie interest in protecting a child from emotional harm, see *Interstate Circuit, Inc.* v. *City of Dallas*, 390 U.S. 676, 690 (1968), an interest expressed recently by the General Assembly in the enactment of V.R.E. 807, which allows child victims of sexual abuse to testify out of court. The potentially damaging psychological effect on a child of testifying in a sexual abuse trial has been recognized, *Arenda*, 416 Mich. at 13, 330 N.W.2d at 818; Libai, *The Protection of the Child Victim of a Sexual Offense in the Criminal Justice System*, 15 Wayne L. Rev. 977, 984 (1969), and cross-examination has been identified as one of the most potentially damaging aspects of a young child's participation in the trial. Note, *Victimizing the Child Victim: Vermont Rule of Evidence 807 and Trauma in the Courtroom*, 11 Vt. L. Rev. 631, 646 (1986). Given the strong potential prejudice from the allowance of the proffered cross-examination, compared to its demonstrably weak probative value, we conclude that the trial court's ruling was without error.

### B.

The defendant nevertheless contends that, as applied below, the Rape Shield Law violated his right of confrontation guaran-

teed by the federal and Vermont Constitutions.[7] He relies primarily on *Davis* v. *Alaska*, 415 U.S. 308 (1974). In *Davis*, the Supreme Court held that the defendant's right of confrontation was violated by application of an Alaska statute, which shielded a key prosecution witness from cross-examination concerning his juvenile record, where the defendant argued that the witness' probationary status was probative of his bias toward defendant. *Id.* at 318. The *Davis* Court balanced the state's interest against the interests of the criminal defendant, and concluded that the state's policy of protecting juvenile offenders from public exposure was "outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness." *Id.* at 319. Defendant contends that when a similar balancing of the State's interest—as expressed in the Rape Shield Law—against the defendant's confrontation rights is conducted in this case, the Rape Shield Law must yield. We disagree.

" 'The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.*' " *Id.* at 315-16 (quoting 5 J. Wigmore, Evidence § 1395, at 123 (3d ed. 1940) (emphasis in original)). Furthermore, the Supreme Court has interpreted the right of confrontation to guarantee "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware* v. *Fensterer*, 474 U.S. 15, 20 (1985); see also *State* v. *Paquette*, 146 Vt. 1, 5, 497 A.2d 358, 361 (1985) (no denial of opportunity to cross-examine witness where "the effectiveness of such cross-examination was limited because of the witnesses' failure to recall the events described in their [prior] statements."). Accordingly, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware* v. *Van Arsdall*, 475 U.S. 673, 679 (1986).

---

[7] We have held that the right of confrontation, guaranteed in Chapter I, Article 10 of the Vermont Constitution, is substantively equivalent to the right of confrontation guaranteed by the Sixth Amendment. *State* v. *Sprague*, 144 Vt. 385, 390 n.2, 479 A.2d 128, 131 n.2 (1984). Accordingly, there is no need to address the defendant's confrontation argument separately under the Vermont and federal constitutions. *Id.*

■ As noted above, defendant sought to cross-examine both the complaining witness and the prosecution's expert about the complainant's prior sexual assault by another man in order to show a possible alternative source of post-traumatic stress disorder. Whether addressed to the complaining witness or the expert, this line of cross-examination was aimed at testing the reliability of the expert's opinion about the cause of the syndrome. The trial court permitted full cross-examination of the expert on this issue, and defendant's counsel argued extensively in closing argument about the relevance of these incidents to the question of the source of the syndrome. Under these circumstances, we cannot conclude that the inability to cross-examine the complaining witness, *in addition to* the expert, denied defendant his right of confrontation. Consistent with defendant's right to confrontation, the trial court could prohibit cross-examination of the complaining witness in order to protect the victim from "unwarranted and unreasonable cross-examination into these areas," *Arenda*, 416 Mich. at 13, 330 N.W.2d at 818, as well as protect against "confusion of the issues" through "interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679.

## III.

Defendant next contends that the trial court erred by admitting evidence of defendant's prior sexual relations with the complainant. Over defendant's objection, the complainant testified that, on approximately six occasions within two years of when the charged offense took place, the defendant had sexually molested her by rubbing his penis on her leg and requiring her to touch his genitals. She testified that these acts occurred in her bedroom when her mother was either sleeping, watching T.V., or in the kitchen. She further testified that after these incidents, the defendant told her not to tell anyone about them "or else." According to the complainant, she did not tell anyone about what had happened on these occasions until after she had finally spoken up about the charged incident because she was afraid and embarrassed.

The admissibility of the challenged evidence is governed by V.R.E. 404(b), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he

acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The general principle of exclusion set forth in the rule is consistent with the rule previously extant in our common law that "evidence of a distinct, independent offense, though of the same kind as that charged, is not admissible" to show predisposition to commit a similar crime or propensity to engage in criminal conduct. *State* v. *Ryan*, 135 Vt. 491, 497, 380 A.2d 525, 529 (1977). Thus, when the logical relevance of the proffered evidence is limited exclusively to the inference that because the defendant is a person who has committed this crime before, it is more probable that he committed the crime for which he is on trial, the evidence is absolutely inadmissible. McCormick on Evidence § 190, at 565 (W. Cleary ed. 1984). Such evidence may be admissible, however, where it is relevant to some other issue in the case (such as those examples listed in the rule), and the probative value of the evidence outweighs its prejudicial effect. *State* v. *Bevins*, 146 Vt. 129, 135, 498 A.2d 1035, 1039 (1985) (evidence offered under the exceptions listed in V.R.E. 404(b) must pass the balancing test of Rule 403 to be admissible).

The trial court, relying on *Huddleston* v. *State*, 695 P.2d 8 (Okla. Crim. App. 1985), admitted the evidence on the theory that it "exhibits a common scheme or transaction that's continuous in nature of ongoing behavior." In *Huddleston*, the defendant was charged with raping his daughter, and the victim was allowed to testify to a prior incident of molestation which occurred several months before the charged incident. The court held the evidence was admissible, reasoning that because the defendant had warned the victim not to tell anyone about the prior incident, the evidence tended to show the existence of a plan or scheme whereby " 'the [prior] crime [was] committed to prepare the way for another and the commission of the second crime [was] made to depend on the first.' " *Id.* at 11 (quoting *Roulston* v. *State*, 307 P.2d 861, 869 (Okla. Crim. App. 1957)).

The rationale of the *Huddleston* decision supports the admissibility of the evidence of prior sexual acts in this case. As noted above, the controlling question at this stage is whether the evidence is relevant to an issue other than the defendant's propen-

sity to commit this type of crime; " 'does it tend to prove any fact material to the issues in the case?' "[8] *State* v. *Howard,* 108 Vt. 137, 152, 183 A. 497, 504 (1936) (quoting *State* v. *Donaluzzi,* 94 Vt. 142, 145, 109 A. 57, 59 (1920)). In a child molestation case such as this, the major issue is whether the alleged criminal act took place; there is no issue of identity and no issues associated with the defense of consent. Evidence that the defendant previously molested the victim, and threatened her with harm if she were to reveal the incident, gives rise to the legitimate inference that because of the manner in which the prior sexual acts were perpetrated, the prior acts and the charged crime were part of a concerted scheme or plan of molestation. If the evidence of prior acts establishes the existence of such a plan, the necessary connection between the prior acts and the crime charged is present, bringing the evidence within the scope of Rule 404(b). Cf. *Ryan,* 135 Vt. at 499, 380 A.2d at 530 (evidence of other crimes inadmissible where there is no "*connection* between the two crimes other than that connection which depends on the naturally drawn but legally insufficient assumption that 'If he did it once, he probably did it again.' ") (citing *State* v. *Howard,* 108 Vt. at 153, 183 A. at 504-05).

We recognize, however, as have other courts and commentators, that admitting evidence of prior sexual acts to prove a plan comes perilously close to the prohibited practice of admitting evidence of the defendant's character to prove he acted in conformity therewith in committing the crime charged. See *State* v. *Spreigl,* 272 Minn. 488, 493, 139 N.W.2d 167, 171 (1965); 22 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5244, at 500 (1978). The danger is obvious because of the strong tendency on the part of the jury to consider the prior acts as evidence of defendant's character or propensity to commit such crimes, rather than as evidence of a planned course of conduct. Wright & Graham § 5244, at 500. Therefore, in order to protect an accused's right to a fair trial, the trial courts must be careful not to apply this exemption in a manner that swallows the rule.

---

[8] V.R.E. 401 states that:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

In order to ensure the principled application of the rule, trial courts must find, at a minimum, a clear inference of the existence of a plan from the prior acts. At least two factors are crucial considerations in making this determination: similarity between the prior acts and the crime charged and proximity in time. *State* v. *Just*, 184 Mont. 262, 269, 602 P.2d 957, 961 (1979). Other factors may also be considered, but the controlling consideration is whether the evidence tends to establish a scheme or plan of sexual molestation.

In this case, the prior sexual contacts, although not identical, were sufficiently similar in character to the charged incident to give substantial support to an inference of a plan. All the incidents occurred at night in a bedroom; they all occurred when the defendant was purportedly telling bedtime stories; the child's mother was always in another part of the house when the acts occurred. Most importantly, defendant always made sure to tell the victim not to tell anyone else about the incidents. When these circumstances are viewed together, we cannot say that the trial court abused its discretion in concluding that the evidence tended to establish a plan of ongoing sexual molestation.

The determination that the evidence of prior sexual acts is logically relevant, however, does not conclusively establish its admissibility.

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

V.R.E. 403. Once evidence of prior sexual acts is determined to be logically relevant, it is still not admissible unless it passes the balancing test of Rule 403. *Bevins*, 146 Vt. at 135, 498 A.2d at 1039.

As with evidence of prior sexual conduct of a complaining witness, the probative value of evidence of prior bad acts should be assessed in terms of the amount and strength of other evidence of guilt that is available to the prosecution. 2 J. Weinstein, Weinstein's Evidence § 404[18], at 404-141 to 147 (1986) (citing *United States* v. *Beechum*, 582 F.2d 898, 914-15 (5th Cir. 1978), *cert. denied*, 440 U.S. 920 (1979)). "It is the incremental probity of the evidence that is to be balanced against its potential for undue prejudice." *Beechum*, 582 F.2d at 914. In other words, it is

the prosecution's duty to demonstrate a need to introduce the evidence in its case in chief. See *State* v. *Billstrom*, 276 Minn. 174, 178-79, 149 N.W.2d 281, 285 (1967); *Just*, 184 Mont. at 272, 602 P.2d at 963. In cases where there is substantial evidence, aside from the victim's testimony, to support the State's burden of proof, the evidence of prior sexual contacts should be excluded as cumulative.

In this case, as in many other child sexual assault cases, there was sparse direct evidence of the crime aside from the child-victim's testimony. There was no physical evidence; the only prosecution witness whose testimony related specifically to the incident in question was the mother, who testified to the general circumstances in the apartment on the evening when the charged incident took place. Under the circumstances, the evidence of prior acts was highly probative.

In addition, however, the potential prejudice from the admission of this evidence was extremely high. Weinstein § 404[18], at 404-149 to 150 ("All evidence of other crimes is prejudicial, but some—such as evidence of prior sexual offenses . . . is probably more prejudicial than others."). In *State* v. *Gardner*, 139 Vt. 456, 460-61, 433 A.2d 249, 251 (1981), this Court recognized that "[a]n especially severe possibility of prejudice exists when the crime to be introduced . . . is similar to or the same as the crime for which the defendant is accused." The difficulty is only exacerbated by the character of the evidence: One can think of no potentially more inflammatory evidence than similar prior sexual contacts.

Given the highly inflammatory nature of this type of evidence, it is essential that the court instruct the jury regarding the limited purpose for which the evidence is admitted and that the defendant cannot be tried and convicted of any offense not charged in the information. See V.R.Cr.P. 26(c); *Godfrey* v. *People*, 168 Colo. 299, 302, 451 P.2d 291, 292 (1969); *Just*, 184 Mont. at 274, 602 P.2d at 963. In this case, the court, as part of its charge to the jury, instructed the jury adequately with regard to the permissible uses of the evidence.

While we may, on review, disagree with an evidentiary ruling of the trial court, such a ruling is not subject to revision unless it clearly and affirmatively appears that the trial court withheld or abused its discretion. *State* v. *Carter*, 142 Vt. 588, 592, 458 A.2d 1112, 1115 (1983); *State* v. *Picknell*, 142 Vt. 215, 230, 454 A.2d 711, 718 (1982). Given the logical relevance and substantial pro-

bative value of the evidence, and considering the court's instruction to the jury respecting the purposes for which the evidence could be considered, we cannot say that the court abused its discretion in admitting the evidence. Even though each case necessarily turns on its own facts, our conclusion is supported by numerous similar rulings of other courts. See *State v. Jerousek,* 121 Ariz. 420, 426-27, 590 P.2d 1366, 1373 (1979); *Godfrey,* 168 Colo. at 302, 451 P.2d at 292; *State v. Folkens,* 281 N.W.2d 1, 5 (Iowa 1979); *State v. Matteson,* 287 N.W.2d 408, 411 (Minn. 1979); *Just,* 184 Mont. at 271, 602 P.2d at 961; *Huddleston,* 695 P.2d at 11.

*Reversed and remanded.*