## State of Vermont v. Michael Robinson

[611 A.2d 852]

No. 90-549

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed April 3, 1992

*William Sorrell*, Chittenden County State's Attorney, and *Pamela Hall Johnson*, Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*E.M. Allen*, Defender General, and *William A. Nelson*, Appellate Attorney, Montpelier, for Defendant-Appellant.

**Dooley, J.** After a trial by jury, the district court convicted defendant of lewd and lascivious conduct with a child. He appeals, arguing that a statement he made to the arresting officer, "I never thought this would happen again," was improperly admitted under the Vermont Rules of Evidence and was involuntarily given in violation of his constitutional rights. He further argues that testimony given by the police officer relating statements made to him by the complainant child was improperly allowed because the child made the statements after a motive to falsify had arisen. We affirm.

The charges against defendant centered on defendant's contact with the child, who was four years old at the time of the incident and seven years of age at trial, while he babysat for the child one night in his apartment. The State alleged that defendant fondled the child's penis and had the child touch his penis. Defendant testified at trial that the only touching that took place was when the child momentarily touched defendant's penis, out of a child's innocent curiosity, and that defendant told the child to stop as soon as he was aware of the contact, and sent him to another room.

Following an investigation that included an interview with the child, a Burlington police officer spoke with defendant. Defendant confirmed that he had babysat for the child, and the officer asked defendant to accompany him to the police station. There, the officer informed defendant of his rights and arrested him. Defendant spoke over the phone with an attorney, who advised him not to discuss the charge, and he declined to answer questions. During the officer's routine booking procedure, defendant answered questions regarding his address, employment, age and so forth; defendant asked the officer if he was going to be jailed and told the officer that he was "sick" and that he was an outpatient at a mental health clinic. The officer responded to the defendant's questions. After the booking inquiries resumed, defendant said, not in response to any

question, "I didn't think anything like this would happen again."

That statement is the focus of this appeal. Although defendant objected, the trial court allowed the State to introduce this statement as an admission. The court also denied defendant's motion to suppress the statement on the ground that it had been given involuntarily.

We first address the admissibility of the statement to the arresting officer under the Vermont Rules of Evidence. Defendant first argues that the statement should have been excluded under V.R.E. 404(b), which states that evidence of prior bad acts is "not admissible to prove the character of a person in order to show that he acted in conformity therewith," but allows such evidence for other purposes.

It is important at the outset to understand the parties' respective positions. The State argues that the statement was an admission that defendant committed the offense for which he is charged. It is interested in the apparent reference to another charge only insofar as the reference bolsters its interpretation of the words. The defendant, on the other hand, seeks to exclude the whole statement even if it is an admission to the current charge. He argues that, if interpreted as the State seeks, it is also an admission to a prior crime, and that admission is barred under V.R.E. 404(b).

The rule on which defendant relies bars propensity evidence—that is, evidence that is presented in order to convince the jury that it is more likely that defendant did the act presently charged because it is similar to something he has done in the past. See *State v. Hurley*, 150 Vt. 165, 168, 552 A.2d 382, 383 (1988). The rule provides, however, that prior bad act evidence may be admissible for other purposes and sets forth an illustrative list of permitted uses. The list is not exclusive. See *State v. Bruyette*, 158 Vt. 21, 27, 604 A.2d 1270, 1272 (1992) (evidence is admissible for "some other legitimate issue in the case"). We have, for example, allowed admission of such evidence to show a defendant's sanity or to provide the basis for the opinion of an expert witness even though neither of these uses is among the

list specifically authorized in Rule 404(b). *State v. Percy*, 149 Vt. 623, 641, 548 A.2d 408, 417 (1988).

■ The answer to defendant's contention is that the court admitted the evidence for a purpose not prohibited by V.R.E. 404(b). To the extent that the statement might have constituted an admission of a prior bad act, it was a by-product of an admission to the crime before the court. There was no claim that the prior bad act showed a character trait or that defendant acted in conformity with that trait in committing the current crime.

Defendant emphasizes that the State argued to the court and the jury that the statement shows that defendant committed a crime in the past. The State did so, however, only to advance its theory that the words conveyed an admission of the act presently charged. The words made sense as an admission to the current crime only if they were made in reference to past conduct.

■ Defendant also argues that the evidence of the past crime is admissible only if the trial court is able to find the existence of the past crime by a preponderance of the evidence, a standard he argues is not met here. We seriously doubt whether the State had the burden to prove the existence of the past crime at all when the real issue was whether defendant admitted committing the crime for which he was charged. In any event, the United States Supreme Court has held that prior bad act evidence that is otherwise admissible under Federal Rule 404(b) may be allowed if the jury could reasonably find by a preponderance of the evidence that defendant committed the prior bad act. *Huddleston v. United States*, 485 U.S. 681, 690 (1988). We adopted that interpretation of V.R.E. 404(b) in *State v. Wheel*, 155 Vt. 587, 603, 587 A.2d 933, 943 (1990), and its standard is met here. The jury could reasonably conclude that defendant admitted committing the crime for which he was charged and, therefore, that he committed a similar crime in the past. The State has no burden to show the details of that prior crime.

In reaching the conclusion that the statement was not barred by Rule 404(b), we are guided by the decisions of other states

that have reached such a conclusion under similar or identical evidentiary rules. See *Callis v. People*, 692 P.2d 1045, 1052 (Colo. 1984); *Ingram v. State*, 253 Ga. 622, 638, 323 S.E.2d 801, 816 (1984); *Brafford v. State*, 516 N.E.2d 45, 47–48 (Ind. 1987); *State v. Morris*, 429 So. 2d 111, 121 (La. 1983); *Commonwealth v. Jackson*, 388 Mass. 98, 105, 445 N.E.2d 1033, 1037 (1983); *State v. Charles*, 92 N.C. App. 430, 435–36, 374 S.E.2d 658, 661 (1988); *State v. Tillman*, 304 S.C. 512, 515, 405 S.E.2d 607, 612 (1991).

█ Defendant's second argument on this point is that the probative value of the statement is substantially outweighed by its prejudicial impact, and, therefore, is barred by V.R.E. 403. See *State v. Catsam*, 148 Vt. 366, 380, 534 A.2d 184, 193 (1987) (evidence offered as an exception to general past acts prohibition of Rule 404(b) must pass Rule 403 balancing test for admissibility, citing *State v. Bevins*, 146 Vt. 129, 135, 498 A.2d 1035, 1039 (1985)). V.R.E. 403 provides, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." The rule's balancing test is applied by the trial court in its sound discretion, *State v. Chenette*, 151 Vt. 237, 245, 560 A.2d 365, 371 (1989), and we will reverse only for abuse of that discretion. *State v. McElreavy*, 157 Vt. 18, 23, 595 A.2d 1332, 1335 (1991).

There are a number of factors in support of defendant's position. The statement is ambiguous. While the State's interpretation is possible, it is also possible that the statement referred to the charge or the arrest and not to the commission of the crime. The probative value is weakened by the ambiguity.

If the State's interpretation is correct, defendant committed a past crime similar to that for which he was charged, but he was never charged for the prior crime. See *State v. McCarthy*, 156 Vt. 148, 155, 589 A.2d 869, 873 (1991)(evidence of uncharged crime presents "grave danger of prejudice"). As noted above, the State did not offer proof, other than defendant's statement, that the prior crime existed, and defendant denied that he ever

committed such a crime. Defendant argues that all these factors make the admission of the statement highly prejudicial.

■ While defendant's arguments have some force, we conclude that the court had the discretion to admit the statement. First, the nature of the ambiguity in the statement affects the balancing in a way that supports admissibility. If the jury finds that the "this" which defendant did not think would happen again was the commission of a sexual assault, the probative value of the statement is very high. Correspondingly, the danger of unfair prejudice is lowered because the admission of the crime for which defendant is charged is far more significant than the admission of the past crime. See *State v. Jackson*, 351 N.W.2d 352, 356 (Minn. 1984) (where statement included admission defendant strangled two women and his two young sons, reference to possible killing of his spouse was not inflammatory). On the other hand, if the "this" is not commission of the present crime, it also does not refer to commission of a past crime. Although there is no probative value if the statement is interpreted this way, there is only a small risk of unfair prejudice. See *Brafford*, 516 N.E.2d at 48 ("vague mention" of prior record does not negate admissibility). This is the type of determination between innocent and guilty interpretations of ambiguous evidence appropriately resolved by the jury.

Second, because details of any prior bad act were irrelevant to the State's theory of admission, and were not known to the State, there was no vivid portrayal by the State to the jury of any past act. This absence of detail reduced the impact of the evidence and its prejudicial effect. See *State v. Raymond*, 148 Vt. 617, 622–23, 538 A.2d 164, 167 (1987) (V.R.E. 403 can be used to exclude "lurid details").

Third, defendant had an effective opportunity to cross-examine the officer and respond to the statement. Defendant showed that he had never before been charged as an adult, in Vermont or any other state, with sexual misconduct or misconduct with children. His attorney elicited from the officer that police records in Burlington, where defendant had spent nearly his entire life, did not indicate that any complaint had ever been filed

against him for any such misconduct. He presented a plausible alternative interpretation of the statement: he had once been arrested for marijuana possession and was referring to that experience.

Finally, the State had a clear need to use the statement to corroborate the testimony of the child, see *Catsam*, 148 Vt. at 383, 534 A.2d at 195 (in weighing probative value, court must consider State's need for evidence), and it was not possible to edit the statement to delete the reference to past acts and preserve an understandable reference to the act for which defendant was charged. The conflict could not be avoided. See *Callis v. People*, 692 P.2d at 1052 (where possible, reference to past acts should be severed from otherwise probative and admissible statement and suppressed).

The prejudicial effect could have been mitigated further by a limiting instruction. See *Catsam*, 148 Vt. at 383, 534 A.2d at 195 (court, in properly admitting evidence of prior sexual assault of a child by defendant, should instruct jury on limited purpose for admitted evidence and that the defendant cannot be convicted of offenses not charged in the information). The court, however, invited defendant to recommend a limiting instruction on the point and he did not do so. See *Commonwealth v. Gabrielson*, 370 Pa. Super. 271, 281, 536 A.2d 401, 403-04 (1988) (although limiting instruction would have been proper, no per se rule required it in absence of request by defendant or objection to its absence). Moreover, a limiting instruction in the circumstances of this case might not have aided the defendant, who was more concerned with downplaying the effect of the statement as an admission to the current charge than as an admission of past acts. We find no abuse of discretion in admitting the statement without such an instruction.

Defendant next claims that under the Fifth and Fourteenth Amendments to the United States Constitution, and under Article 10 of the Vermont Constitution, his statement should have been suppressed as involuntarily given. He argues that the statement was induced in part by his weakened mental condi-

tion and in part by the continued questioning by the officer after he had requested counsel.

It is the State's burden to show, by a preponderance of the evidence, that the defendant confessed voluntarily. *State v. Beckley*, 157 Vt. 446, 448, 600 A.2d 294, 295 (1991). The court must examine the statement in the light of the totality of the circumstances to determine if it was "'the product of [defendant's] rational intellect and . . . unfettered exercise of free will.'" *Id.* (quoting *State v. Zehner*, 142 Vt. 251, 253, 453 A.2d 1126, 1127 (1982)). We will uphold a trial court's ruling that a confession was given voluntarily unless the ruling is unsupported by the evidence or clearly erroneous. *Id.* at 450, 600 A.2d at 296. We find no such error here.

In *Colorado v. Connelly*, 479 U.S. 157, 167 (1986), the Supreme Court held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." In that case, the Court overturned a state court ruling that a confession was given involuntarily, despite no coercive police action, because the defendant was mentally ill and incapable of validly waiving his right to remain silent. The Court explained that "while mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry." *Id.* at 165. *Connelly* effectively overruled our decision in *State v. Harvey*, 145 Vt. 654, 658, 497 A.2d 356, 358 (1985), to the extent that we relied on the federal constitution to hold that statements made by a defendant lacking mental capacity were involuntary in the absence of police coercion.

Although defendant argues that the statement was given involuntarily even under *Connelly*, his main argument is that we should reject the reasoning of *Connelly* under Chapter I, Article 10 of the Vermont Constitution. We decline to reach the state constitutional argument because defendant failed to raise it below. Although defendant's initial motion to suppress mentioned the Vermont Constitution, the reference was in rela-

tion to a statement that defendant made before he was in custody.

Defendant presents two arguments why the statement was involuntary even under the standard set forth in *Connelly*: there was an element of police coercion because the officer knew of defendant's mental condition, unlike in *Connelly*, in which the police had "no indication whatsoever" of respondent's mental illness, 479 U.S. at 161; and the statement was the product of an interrogation conducted after defendant invoked his right to counsel and his right to remain silent. With respect to the first argument, we find nothing in *Connelly* to suggest that police coercion is automatically present if the officer knows of defendant's mental condition. The predecessors to *Connelly* on which defendant relies, *Blackburn v. Alabama*, 361 U.S. 199 (1960), and *Townsend v. Sain*, 372 U.S. 293 (1963), do not support his claim; in both cases the police had some knowledge of the arrestee's mental condition and exploited it. There was no evidence in this case that police misconduct induced the statement at issue. The police questioning at the time defendant made the statement was limited to routine biographical information, not intended to elicit an incriminating statement. See, e.g., *United States v. Dougall*, 919 F.2d 932, 935 (5th Cir. 1990) (biographical questions which are part of booking procedure and not intended to elicit damaging statements are not interrogation for Fifth Amendment purposes).

Nor does the second argument support a conclusion that the statement was involuntary. Defendant reached a lawyer by telephone, and the lawyer told the officer not to question defendant about the offense. During the booking interview, defendant asked whether he would go to jail. He volunteered that he was sick and receiving treatment and expressed concern about whether he could obtain treatment in prison. The officer advised him to talk with his mental health counselor and reminded him of the attorney's advice "not to say anything." After the officer returned to his booking questions, defendant volunteered the statement in issue.

The trial court found that defendant's initial question about whether he would go to jail was spontaneous and admissible. It concluded, however, that the subsequent dialogue about defendant's mental health was moved along by the officer's responses so that it was the functional equivalent of interrogation. Because defendant had not waived his right to counsel before this dialogue, the court found it inadmissible under *Edwards v. Arizona*, 451 U.S. 476, 484–85 (1981). The court did not suppress the statement here at issue, however, because it found the statement was made spontaneously after the officer returned to booking questions.

Defendant's position is that because his statement was made after he had invoked his right to counsel and after an *Edwards* violation, it was necessarily involuntary, even if it was made spontaneously. In this argument, he asserts that the situation is comparable to that in *Collazo v. Estelle*, 940 F.2d 411, 421 (9th Cir. 1991), where a reviewing court utilized a four-factor test in reversing a conviction based in part on a confession made by an in-custody suspect following his assertion of the right to counsel.* The situations are not comparable. The *Collazo* test addresses itself to determining the validity of a waiver of the right to counsel and a willingness to be subjected to interrogation following an assertion of that right. *Collazo* itself, for example, involved a comment by the interrogating police officer after the defendant invoked his Sixth Amendment rights, that waiting for counsel "might be worse for you." *Id.* at 414. Utilizing its four-part test, the court found that the improper statement clearly induced the defendant's subsequent change of heart and

---

* The factors considered in *Collazo* were whether:
(1) there was a break in the stream of events sufficient to insulate the statement from the effect of the prior coercion, (2) it can be inferred that the coercive practices had a continuing effect that touched the subsequent statement, (3) the passage of time, a change in the location of the interrogation, or a change in the identity of the interrogators interrupted the effect of the coercion, and (4) the conditions that would have precluded the use of a first statement have been removed.
940 F.2d at 421.

willingness to be interrogated and rendered his confession inadmissible.

Because *Collazo*, and *Edwards*, 451 U.S. at 484–85, on which it is based, are limited only to custodial interrogation after a suspect has invoked the right to counsel, they have no application to a case where there is no interrogation. We see no reason to expand the holdings of those cases to cover a spontaneous volunteered statement even if there had been some improper interrogation prior to the statement, as long as the statement is unconnected to the interrogation. Defendant would turn *Collazo* into a blanket prohibition on admission of all communication between himself and agents of the state, or into a form of immunization against the use of volunteered statements. The court here made a specific finding that the statement was unrelated to the earlier questioning by the officer that had approximated interrogation, and that the questioning continued by the officer consisted only of routine inquiries permitted after an in-custody suspect has invoked the right to counsel. See *United States v. Carmona*, 873 F.2d 569, 573 (2d Cir. 1989); *United States v. Dougall*, 919 F.2d at 935. The court properly excluded the statements made by defendant after his assertion of the right to counsel which it found to be products of custodial interrogation but admitted the statement it found to be spontaneous and independent of any interrogation.

Defendant's final claim is that the trial court erred in admitting the officer's testimony as to the substance of an investigatory interview in which the child had told him that "Michael touched my goober," a statement similar to that which the child gave in court. After the child testified, the court allowed the State to question the officer about the child's prior statements pursuant to V.R.E. 801(d)(1)(B). That rule provides in part that a statement is not hearsay if it is "consistent with [the witness's] testimony and is offered to rebut an express or implied charge . . . of recent fabrication or improper influence or motive." The court determined that the evidence was admissible because, in cross-examining the complaining witness, defendant's attorney attacked the child's veracity with respect to

his description of defendant's conduct. The attorney had attempted to impress upon the jury the theory that the child had maintained the story in part because of the attention he received from telling it.

In *State v. Roy*, 140 Vt. 219, 227, 436 A.2d 1090, 1094 (1981), we adopted the substance of Rule 801(d)(1)(B) before the Vermont Rules of Evidence were promulgated. Defendant argues that in *Roy* we added the requirement that the statement be made prior to the time when the supposed motive to falsify arose, although this requirement does not appear in the wording of the rule. He further argues that this requirement was not met in this case because the motive to falsify was to gain attention and that motive arose from the child's interaction with adults prior to the interview with the officer.

■■■ The determination of whether to admit evidence of the . prior consistent statement of a witness is a matter for the court's discretion under Rule 801. See *United States v. Reed*, 887 F.2d 1398, 1405 (11th Cir. 1989) (applying identical F.R.E. 801(d)(1)(B)). The *Roy* Court took the requirements for admission from *United States v. Quinto*, 582 F.2d 224, 233–34 (2d Cir. 1978), where the witness was said to hold a "deeply rooted prejudice" against defendant at the time of his statement. The requirement has been invoked in circumstances in which a defendant sought admission of a prior exculpatory statement made under the "'powerful motive' of pending criminal investigation or indictment." *United States v. Payne*, 944 F.2d 1458, 1471 (9th Cir. 1991) (quoting *United States v. Miller*, 874 F.2d 1255, 1274 (9th Cir. 1989)). Here, the motive to fabricate offered by defendant is highly speculative. See *id.* at 1472 (in large part because witness's motive to fabricate at time of prior statement was speculative, statement was properly admitted). We find no abuse of the trial court's discretion in allowing the testimony here.

*Affirmed.*