# State of Vermont v. Terrance L. Pelican

[580 A.2d 942]

No. 89-260

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed June 29, 1990

*Howard E. Van Benthuysen,* Franklin County State's Attorney, and *Jo-Ann Gross,* Deputy State's Attorney, St. Albans, for Plaintiff-Appellee.

*Walter M. Morris, Jr.,* Defender General, and *William A. Nelson,* Appellate Defender, Montpelier, for Defendant-Appellant.

**Dooley, J.** This is an interlocutory appeal, pursuant to V.R.A.P. 5(b), from an order of the district court denying defendant's motion to strike the jury panel. We affirm.

## I.

Defendant is charged with second degree murder. On March 24, 1989, defendant filed a pretrial motion to strike the jury panel, arguing that the jury selection procedures in Franklin County result in jury venires which substantially misrepresent the community in terms of age, occupation and economic status in violation of his constitutional and statutory rights. Three witnesses testified at the evidentiary hearing on the motion. The first witness, the County Clerk of the Franklin Superior Court and member of the Franklin County Jury Commission, described the jury selection process in Franklin County. The second witness was qualified as an expert in the field of data analysis. He compared certain characteristics of a group of 320 potential jurors with the characteristics of the Franklin County population as a whole. The final witness was qualified as an expert in the field of sociology, and he testified to the social significance of this comparison.

Based upon the testimony of these three witnesses, the court made the following findings. The Franklin County Jury Com-

mission (Commission) composes a "Master List" of 1500 names of potential jurors who are randomly drawn from the voter registration lists of towns within the county and a list of residents over eighteen years old with a driver's license. The Master List provides the names of potential jury panels and is updated every two years. One thousand names are selected from the voter list (which contains approximately 22,000 names), and the remaining five hundred are selected from the license list (which contains approximately 21,000 names). The names of potential jurors for the Master List were selected in accordance with the Rules of the Court Administrator entitled Rules Governing Qualification, List, Selection and Summoning of All Jurors (hereinafter, Rules). Once the Master List of 1500 names was complete, the Commission assigned a number to each name. Tags were marked with these numbers and deposited in a rotating canister called a "wheel." When the Franklin District Court requested jurors, the Commission would draw at random 200 to 250 tags from the wheel in order to extract a pool of 150 qualified jurors. Once the tags were pulled and matched with the corresponding names, those people were sent jury questionnaires. In response to its requests, the Franklin District Court Clerk received a list of 142 qualified jurors in July of 1988 and a list of 147 qualified jurors in January of 1989. These two pools were the source from which defendant's jury panel was to be drawn.

Defendant's data-analysis expert examined 320 jury questionnaires to determine the composition of the jury pool. He analyzed the pool and the population of Franklin County with respect to age, gender, marital status, occupational status and educational attainment. No significant statistical disparities were found with respect to gender, marital status, education and occupation. Only 240 questionnaires contained information relating to the age of the potential juror, and they revealed the following. In the age group of 18-to-20-year-olds, .5% (one juror was age 20) of the jury pool was in that group as compared to an estimated 7% of the community in that group. In the age group of 18-to-24-year-olds, there were 6.2% in the pool and an estimated 16% of that age group in the community. Finally, in the

age group of 45 to 54, 24.2% of the jury pool were in that age group as compared to 14.9% in the community.

Based on the testimony, the trial court found that persons aged 18 to 24 are a distinctive group because "their attitudes are different from those in other age groups and they behave differently than other age groups in the areas of fertility, crime and delinquency." The court also found that the age group of 18-to-20-year-olds is a distinctive age group because "their attitudes are different from other age groups in part as a result of laws which apply to their age group and not others." The court found, however, that the 45-to-54-year-old age group was not a sociologically distinct category of persons.

The court then went on to examine the specific claim with respect to the groups. It found that while voter registration lists significantly underrepresent young people, adding the driver's license list as a source of prospective jurors increases the chance of young people being selected to serve. The court found no evidence that any person qualified to vote was prevented or discouraged from registering to vote in Franklin County. Nor was there any evidence that any qualified person was prevented or discouraged from receiving a driver's license. Nevertheless, the court found that because one must be at least eighteen years old to be eligible to be placed on the Master List, the selection process systematically excluded people who are eighteen and nineteen years of age because the Master List was updated only every two years.

Based upon these findings, the court concluded that defendant failed to meet his burden of proof to establish a violation of his Sixth Amendment right to a jury drawn from a fair cross section of the community. The court concluded that for either 18-to-20-year-olds or 18-to-24-year-olds, defendant failed to establish that members of the group were not fairly and reasonably represented in the jury pool. The court reached this conclusion based on the absolute disparity between the incidence of members of the group in the community and the incidence in the pool. In addition, the court concluded that defendant did not show that there is a difference between his Sixth Amendment right to an impartial jury and his right under

the Vermont Constitution to a fair and democratic jury. The court also held that defendant failed to establish a violation of his right to equal protection under the Fourteenth Amendment of the United States Constitution and Chapter I, Article 7 of the Vermont Constitution, because he did not prove that there was substantial under- or overrepresentation or that any of the groups were intentionally or purposefully discriminated against. Finally, the court concluded that defendant's statutory claims were without merit because he failed to demonstrate that the Master List was unrepresentative of the community. On May 16, 1989, the court granted defendant's motion for an interlocutory appeal under V.R.A.P. 5(b).

Defendant's appeal is limited to the issue of age bias in the jury selection process. He argues that his showing of a substantial underrepresentation of young people on Franklin County jury venires made out a prima facie violation of his right to a representative jury as guaranteed by the Vermont Constitution, by Vermont's jury selection statutes, and by the Sixth and Fourteenth Amendments to the Federal Constitution.

## II.

██ Before we address defendant's arguments, we must be satisfied that this is a proper case for interlocutory review. Under Appellate Rule 5(b)(1), the trial judge may permit an interlocutory appeal if the defendant establishes three elements: "(1) the ruling to be appealed must involve a controlling question of law; (2) there must be a substantial ground for difference of opinion on that question of law; and (3) an immediate appeal must materially advance the termination of the litigation." *State v. Wheel*, 148 Vt. 439, 440, 535 A.2d 328, 329 (1987). Upon our own motion, this Court may review the trial court's decision to grant permission for an interlocutory appeal, and if we find that any of these three elements have not been met, we may dismiss the appeal. V.R.A.P. 5(b)(3). Because we were concerned that this appeal may not have been properly granted, we requested by entry order that defendant's brief "include a discussion concerning the appropriateness of interlocutory review," and that the State respond to such points in its brief. The

State, however, failed to respond to defendant's arguments on this issue. In the absence of a response by the State, and in light of the discretion we accord to trial court decisions on interlocutory appeal motions, *State v. McCann*, 149 Vt. 147, 151, 541 A.2d 75, 77 (1987), we conclude that the elements for an interlocutory appeal have been established and permission to appeal was properly granted.

## III.

■ We address first the Sixth Amendment argument because it provides a useful framework with which to analyze the remaining arguments and because we have the benefit of extensive analysis from other state and federal courts. The Sixth Amendment, made applicable to the states through the Fourteenth Amendment, provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State and district wherein the crime shall have been committed . . . ." In a series of relatively recent cases, the United States Supreme Court has concluded that an impartial jury is not provided "if the jury pool is made up of only special segments of the populace or if large, distinctive groups are excluded from the pool." *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975). Thus, the impartial jury requirement is met only when jury venires are drawn from a fair cross section of the community. See *Holland v. Illinois*, — U.S. —, —, 110 S. Ct. 803, 807 (1990); *Taylor*, 419 U.S. at 527. The Supreme Court has made clear, however, that the fair cross section requirement "is a means of assuring, not a *representative* jury (which the Constitution does not demand), but an *impartial* one (which it does)." *Holland*, — U.S. at —, 110 S. Ct. at 807 (emphasis in original). The Constitution does not require that the jury selection process result in jury venires that are a statistical mirror of the community.

In order to establish a prima facie violation of the fair cross section requirement, the defendant must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair

and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979). For the reasons discussed below, we do not believe that defendant has established that young adults comprise a distinctive group in Franklin County; hence there is no Sixth Amendment violation.

The United States Supreme Court has never defined the meaning of "distinctive group" as the term is used in *Duren*. See *Lockhart v. McCree*, 476 U.S. 162, 174 (1986). In the absence of a Supreme Court ruling, the federal and state courts have developed a three-prong test to determine whether a particular group of people is a distinctive group under the Sixth Amendment: (1) the group must be defined and limited by some clearly identifiable factor (such as race or sex), (2) there must be a common thread or basic similarity in attitude, ideas or experience which runs through members of the group, and (3) there must be a community of interest among the members of the group to the extent that the group's interest cannot be adequately represented if the group is excluded from the jury selection process. See, e.g., *Ford v. Seabold*, 841 F.2d 677, 681–82 (6th Cir.), *cert. denied*, 488 U.S. 928 (1988); *Barber v. Ponte*, 772 F.2d 982, 997 (1st Cir. 1985), *cert. denied*, 475 U.S. 1050 (1986); *Willis v. Zant*, 720 F.2d 1212, 1216 (11th Cir. 1983), *cert. denied*, 489 U.S. 1059 (1989); *State v. Rupe*, 108 Wash. 2d 734, 746, 743 P.2d 210, 218 (1987).

It is true, as defendant contends, that whether a class or group of people is sufficiently distinct for the Sixth Amendment's fair cross section analysis is a question of fact for the trial court. See *Willis v. Zant*, 720 F.2d at 1216; *Parks v. State*, 254 Ga. 403, 410–11, 330 S.E.2d 686, 694 (1985). Like all questions of fact, however, the failure to meet the basic burden of proof with respect to that question will allow the court to rule as a matter of law. Thus, while *Willis* held that distinctiveness is a question of fact, it added the caveat that a court may determine that a particular group is not distinct as a matter of law. 720 F.2d at 1217. The issue of whether the evidence was sufficient in

this case to allow the court to find that the age groups involved were distinctive is important because the trial court made such findings. If the defendant made the minimum showing to meet his initial burden, we must defer to the trial court's finding.

With few exceptions, both state courts, see, e.g., *Thomas v. State,* 443 N.E.2d 1197, 1199 (Ind. 1983); *Ford v. Commonwealth,* 665 S.W.2d 304, 308 (Ky. 1983); *Commonwealth v. Szczuka,* 391 Mass. 666, 671, 464 N.E.2d 38, 42 (1984); *State v. Perkins,* 219 Neb. 491, 497, 364 N.W.2d 20, 25 (1985); *State v. Rupe,* 108 Wash. 2d at 747–48, 743 P.2d at 218, and federal courts, see, e.g., *Ford v. Seabold,* 841 F.2d at 682 (ages 18–29 is not a distinctive group); *Anaya v. Hansen,* 781 F.2d 1, 3 (1st Cir. 1986) (ages 18–24 is not a distinctive group); *Barber v. Ponte,* 772 F.2d at 998 (ages 18–34 is not a distinctive group); *Cox v. Montgomery,* 718 F.2d 1036, 1038 (11th Cir. 1983) (ages 18–30 is not a distinctive group); *Davis v. Greer,* 675 F.2d 141, 146 (7th Cir.) (ages 18–21 is not a distinctive group), *cert. denied,* 459 U.S. 975 (1982); *United States v. Kirk,* 534 F.2d 1262, 1278 (8th Cir. 1976) (ages 18–20 is not a distinctive group), *cert. denied,* 430 U.S. 906 (1977), have held that age, by itself, is an insufficient bench mark to establish a distinctive group. There are relatively few cases or law review commentary to the contrary. See *People v. Mora,* 235 Cal. Rptr. 340, 347–50 (Ct. App. 1987); *People v. Bartlett,* 89 Misc. 2d 874, 881–83, 393 N.Y.S.2d 866, 871–72 (Sup. Ct. 1977); *State v. Pruitt,* 95 Wis. 2d 69, 75–76, 289 N.W.2d 343, 346 (Ct. App. 1980); Zeigler, *Young Adults as a Cognizable Group in Jury Selection,* 76 Mich. L. Rev. 1045, 1074–75 (1978); Note, *Young Adults: A Distinctive Group Under the Sixth Amendment's Fair Cross-Section Requirement,* 19 Pac. L.J. 1519, 1541–42 (1988).

There are three main grounds on which courts have held that age-defined groups are not distinctive for Sixth Amendment purposes: (1) the parameters of the group are difficult to ascertain and, as a result, varying age limits are used in the claims; (2) the defendant has not proved that the values and attitudes of the group are substantially different from other segments of the community or that the values and attitudes of members of the group are cohesive and consistent; and (3) the membership

of the group is in flux. See *State v. Price*, 301 N.C. 437, 445–46, 272 S.E.2d 103, 110 (1980). On the first ground, the Kentucky Supreme Court noted: "The terminal ages of 'young adults' defy definition, and we know of no end to the maze that could be created by classifying jurors as young adults, middle-aged adults, elderly adults, and on and on." *Ford v. Commonwealth*, 665 S.W.2d at 308. The Sixth Circuit Court of Appeals commented that the age limits considered in various cases for group definitions have been essentially arbitrary. *Ford v. Seabold*, 841 F.2d at 682. Without clear demarcations between age groups, such a group cannot, by definition, be distinctive.

On the second ground, the courts also base their findings in part on the fact that young adults are not a group that has traditionally needed special legal protection. See, e.g., *id.*; *Barber v. Ponte*, 772 F.2d at 999. The *Ford* court cautioned that "if an age classification is adopted, the door would be opened to countless other 'distinctive groups.'" 841 F.2d at 682; see also *Barber*, 772 F.2d at 999 ("an endless variety of other classifications will be entitled to similar treatment").

We conclude that the majority holdings are well reasoned. We are particularly concerned that group definitions like those involved here are arbitrary such that some attitudes of members within the group may be greatly dissimilar, while, at the same time, many group members share attitudes with those outside the group. Nevertheless, we agree with the Georgia Supreme Court that we cannot say that an age-defined group can *never* be found to be distinctive. See *Parks v. State*, 254 Ga. at 411, 330 S.E.2d at 694. The record must, however, respond to the first two grounds for denying that age-defined groups are distinctive.

Although defendant in this case introduced evidence to support his contention that young adults comprise a distinctive group, it is wholly insufficient to overcome the presumption against his position. The evidence consisted of very brief and conclusory testimony of a Professor of Sociology at the University of Vermont to the effect that persons between the ages of 18 and 24 are a "distinctive group," in part because different legal rules may apply to persons between the ages of 18 and 21

years. He also testified that those within the 18-to-21-year-old group were a distinctive group.

The testimony is much too sparse to support the trial court's findings. First, the testimony fails to deal with whether either of the age groupings is under- or overinclusive. Furthermore, there is very little detail on values and attitudes and how they might relate to jury service. Moreover, the testimony failed to show "a basic similarity of attitudes, ideas or experience among [group] members so that the exclusion prevents juries from reflecting a cross-section of the community." *Adams v. Superior Court*, 12 Cal. 3d 55, 60, 524 P.2d 375, 378, 115 Cal. Rptr. 247, 250 (1974).

The testimony is also internally inconsistent. If persons between the ages of 18 and 21 are a distinctive group, they must share significant differences from those between the ages of 21 and 24. Yet, the expert testimony put these dissimilar persons together in a "distinctive group." Either those within the age range of 18-to-21-years or those within the age range of 18-to-24-years may be a distinctive group; however, both cannot be distinctive groups.

■ Finally, the testimony involved the general findings of sociologists around the country with no attempt to describe persons residing in Franklin County. The evidence must specifically describe the area from which the jury is drawn. See, e.g., *Willis v. Zant*, 720 F.2d at 1216 (the distinctiveness of a group for Sixth Amendment purposes depends in part on the time and location of the trial; for example, Latins may be a distinctive group in some communities and not in others).

■ Because of the insufficiency of the evidence, we must conclude that the trial court's findings that the two age groupings were distinctive were clearly erroneous. Accordingly, defendant failed to meet the first part of the *Duren v. Missouri* test and his Sixth Amendment claim must fail.

■ Although we have decided the Sixth Amendment claim on the first part of the test in *Duren v. Missouri*; it is appropriate to note that defendant also faces significant hurdles in meeting the other two parts of the test. His hurdles are particularly

high with respect to the third requirement—that there has been a "systematic exclusion of the group" which he claims is distinctive. The Franklin County system uses voter registration lists supplemented by driver's license lists. Voter registration lists are often the sole or primary source used to compile jury lists in other jurisdictions, and we are aware of no instance in which such reliance on these lists has been invalidated. See generally *United States v. Cecil*, 836 F.2d 1431, 1444–52 (4th Cir.) (detailed discussion of exclusively using voter registration lists), *cert. denied*, 487 U.S. 1205 (1988). In fact, Congress has expressly sanctioned the exclusive use of voter registration lists as the source for jury selection in federal courts. See 28 U.S.C. § 1863(b)(2). Such a system obviously excludes from jury service certain individuals, whatever their race, gender, or age, who have not registered to vote. Nevertheless, Congress has determined that this use of voter registration lists meets the Sixth Amendment's fair cross section requirement because everyone has the opportunity to place their name on the voter registration list and no cognizable group is systematically excluded. See *United States v. Cecil*, 836 F.2d at 1445. The real group excluded, therefore, is the group of persons that do not vote, and that group is not distinctive. The only instances in which the use of voting lists has been invalidated are when the procedures used to extract names from the list have been suspect. See, e.g., *Duren v. Missouri*, 439 U.S. at 370 (statute which grants women an automatic exemption upon request is invalid). Defendant in this case has not attacked the methods used to extract names or exempt persons from jury duty. Based on the evidence, it appears that the Franklin County selection method is more inclusive than one that relies solely on voter registration lists. Hence, he has failed to show that the underrepresentation of young adults is a result of "systematic exclusion" as required by *Duren*.

■ Defendant has a special systematic exclusion claim with respect to those under 21 years of age. Because the lists are updated only every two years, there are fewer persons in this age range as time goes on. Even if persons under 21 years of age were a distinctive group, we could not find systematic ex-

clusion of that group on this record. This exact issue was addressed in *Hamling v. United States*, 418 U.S. 87, 136–38 (1974), where the Supreme Court held that "if the jury wheel is not discriminatory when completely updated at the time of each refilling, a prohibited 'purposeful discrimination' does not arise near the end of the period simply because the young and other persons have belatedly become eligible for jury service." The Court reasoned that periodic emptying and refilling of the jury wheel every four years was constitutionally acceptable "in order to accommodate the practical problems of judicial administration." *Id.* at 138. We therefore hold that the two-year time frame employed by the Franklin County Jury Commission does not systematically exclude those under 21 years of age.

## IV.

Defendant's main argument* is that the jury selection process violates the Vermont Constitution's right to a fair cross section under three different provisions: (1) Chapter I, Article 10, which guarantees a criminal defendant the right to trial "by an impartial jury"; (2) Chapter I, Article 12, which provides that the "right to trial by jury . . . ought to be held sacred"; and (3) Chapter II, § 38, which stipulates that "great care ought to be taken to prevent corruption or partiality in the choice and return, or appointment of Juries."

We can dispense quickly with defendant's argument under Articles 10 and 12 of Chapter I. Provisions identical or similar to these are in the constitutions of most states, and they are generally held not to provide greater rights than the Sixth Amendment to the United States Constitution. See, e.g., *State v. Anaya*, 456 A.2d 1255, 1259 (Me. 1983). In the early case of *State v. Peterson*, 41 Vt. 504, 515 (1869), this Court compared

---

* Defendant also argued below, but not in this Court, that the underrepresentation of young adults denied defendant equal protection of the laws. Defendant was 41 years old at the time he made the motion to strike the jury panel. In order to make out an equal protection claim from the underrepresentation of a group on jury venires, defendant must be part of the group which is underrepresented. See *Castaneda v. Partida*, 430 U.S. 482, 494 (1977). Since defendant is not a member of the group he argues is underrepresented, he does not have a valid equal protection claim.

the provisions of Chapter I of the Vermont Constitution to the Sixth Amendment to the United States Constitution and concluded that "we may infer that the framers of our state constitution intended its provisions should be in conformity to the federal constitution, in respect to trials by jury." Most recently, in *State v. Murphy*, 134 Vt. 106, 108–09, 353 A.2d 346, 349 (1976), we analyzed a claim under Chapter I, Article 10 that the failure to include jurors from outlying counties in the venire for a multi-county district court violated the defendant's rights. That analysis relies in large part on federal tests—for example, the Court found no "systematic exclusion of classes of jurors"— to support its conclusion that there was no violation of Article 10. *Id.* We conclude that, at least with respect to the claims made in this case, neither Article 10 nor 12 support a result different from that reached earlier under the Sixth Amendment.

That leaves only Chapter II, § 38, which defendant reads to impose special Vermont requirements on the composition of jury venires. He emphasizes, in particular, the use of the words "partiality" and "great care" to argue that use of driver's and voter's lists represents insufficient "care" and that the statistical differences shown by the evidence are inconsistent with a high standard of care. For two reasons, we reject defendant's claim.

■■ The first is that our case law is clear that one who challenges a jury array in Vermont must demonstrate prejudice to prevail. See *State v. Goyet*, 119 Vt. 167, 176, 122 A.2d 862, 867 (1956) ("errors and irregularities in making up a jury list do not invalidate it nor furnish ground for challenge to the array unless prejudice is shown to have resulted therefrom"); *State v. Pilver*, 91 Vt. 310, 313, 100 A. 674, 676 (1917). *State v. Murphy* applied the prejudice requirement to a state constitutional claim. 134 Vt. at 108–09, 353 A.2d at 349.

■■ Defendant is a 41-year-old man who is charged with second-degree murder. We fail to see how he is prejudiced if tried by an impartial jury that underrepresents young adults up to age 24. Indeed, he has made no attempt to show or argue

that he is prejudiced by the makeup of the jury venire. Accordingly, he cannot contest the venire or array.

Even if defendant could show prejudice, we would reject his claim. As noted earlier, the United States Supreme Court has held that the Sixth Amendment does not require a representative jury, only an impartial jury. *Holland v. Illinois,* — U.S. at —, 110 S. Ct. at 807. Reduced to its essential point, defendant's argument here is that Ch. II, § 38 requires a representative jury and not just an impartial jury.

The language and interpretations of § 38, as well as the history of jury selection in Vermont, are decidedly against defendant's position. The section uses the term "partiality" and never suggests any requirement that the jury represent interests in the community. In *Isabelle v. Proctor Hospital,* 129 Vt. 500, 505, 282 A.2d 837, 840 (1971), we described the section as ensuring that "the jury be unbiased and without prejudice toward any party." See also *United States v. Smith,* 200 F. Supp. 885, 907 (D. Vt. 1961) (Vermont constitutional provisions, including Chapter II, § 38, require "trial by an *impartial* jury") (emphasis in original), *rev'd on other grounds,* 306 F.2d 596 (2d Cir. 1962).

■ Nor is our history in selecting juries consistent with defendant's argument. In *Briggs v. Town of Georgia,* 15 Vt. 61, 73 (1843), this Court reversed a jury verdict because a member of the jury was not a landowner, commenting that the land ownership requirement "was one that the wisdom of all civilized countries has deemed of importance." Up until 1967, the jury venires were selected by town clerks from among those the clerk found to be "mentally, morally and physically qualified." 9 V.S. ch. 73, § 1586 (1947). These examples demonstrate that representativeness has never been the goal of jury selection in this state. Instead, the goal has been to find persons who are capable of serving competently and impartially. Defendant has not argued that his jury will be either impartial or incompetent. He has no claim under Chapter II, § 38.

## V.

■ Defendant next argues that his rights to a representative jury were violated pursuant to Vermont's jury selection

statutes. In support of this claim, defendant relies solely on the fact that young adults are underrepresented as proof that the list from which jurors were selected was not "representative of the citizens of its county in terms of age," as required by 4 V.S.A. § 952. He also alleges that the Commission failed to conduct "continuous research for persons qualified and liable for jury service," as mandated by 4 V.S.A. § 953(a).

We start by noting that defendant is also precluded from relief under this argument by his failure to show prejudice as a result of the current Franklin County method of choosing jury venires. Even if defendant had shown prejudice, we would reject this claim. Section 952 governs how the court administrator creates rules concerning the qualifications, lists and selection of all jurors. Defendant has not attacked the court administrator's rules, and it is clear that the Jury Commission complied with the rules in formulating its Master List. The Franklin County Jury Commission relied upon both voting lists and driver's license records, as authorized under Rule 3. Using these two lists, it selected at random a master juror list "containing a sufficient number of names to serve the needs of the courts in the county," as required by Rules 6 and 7. Finally, the Commission filed this Master List in the office of the county clerk "prior to the first day of July in each biennial year," as required by Rule 5.

Defendant's claim that the Commission failed to conduct continuous research to find persons qualified and liable for jury service is also without merit. Section 954 specifically authorizes the Jury Commission to use one master list for two years. We cannot read the "continuous research" requirement of § 953(a) as necessitating more frequent creation of lists in view of the specific authorization of § 954.

The trial court's decision to deny the motion to strike the jury panel was correct.

*Affirmed.*