COMMONWEALTH *vs.* JOSEPH M. MANNING.

No. 95-P-696.

Middlesex. September 17, 1996. - November 22, 1996.

Present: KASS, GILLERMAN, & GREENBERG, JJ.

*Jury and Jurors. Practice, Criminal,* Jury and jurors, Contempt. *Constitutional Law,* Jury. *Contempt. Necessity.*

Discussion of the right of an accused, under the Sixth Amendment to the Constitution of the United States, to a jury drawn from a fair cross section of the community. [697-698]

The statutory exemption from jury service accorded to individuals over the age of seventy years by the provisions of G. L. c. 234A, § 4, did not, in violation of the Sixth Amendment to the Constitution of the United States, deprive a criminal defendant of his right to a jury drawn from a fair cross section of the community, where individuals over seventy do not constitute a cognizable classification for Sixth Amendment purposes and where the statute could not be said to be unreasonable. [698-700]

At the trial of an indictment for criminal contempt for violating an injunction prohibiting the blocking of access to a woman's health clinic, the judge correctly excluded as irrelevant evidence proffered by the defendant of his beliefs that would "explain" his behavior and the defendant's necessity defense was foreclosed by *Commonwealth* v. *Brogan,* 415 Mass. 169, 174-176 (1993). [700]

INDICTMENT found and returned in the Superior Court Department on March 26, 1992.

A pretrial motion to dismiss was heard by *Katherine Liacos Izzo,* J., and the case was tried before *Howard J. Whitehead,* J.

*Michele R. Moretti* for the defendant.

*Djuna E. Perkins,* Assistant Attorney General, for the Commonwealth.

KASS, J. Joseph Manning was convicted in Superior Court by a jury of criminal contempt for violating an injunction prohibiting the blocking of access to a woman's health clinic

on January 4, 1992.[1] Manning assigns error to the lower court's denial of his pretrial motion to dismiss on the ground that the right of individuals over seventy years of age to exempt themselves from jury service violated his Federal Sixth Amendment right to a petit jury drawn from a fair cross section of the community.[2] We think that the statutory exemption contained in G. L. c. 234A, § 4, is lawful and affirm the judgment of the Superior Court. We treat briefly Manning's claim that the judge in the contempt proceeding erroneously excluded evidence to "explain" his conduct.

Under the Sixth Amendment to the Constitution of the United States, a person charged with a crime has a right to a jury drawn from a fair cross section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975). *Duren v. Missouri*, 439 U.S. 357, 359 (1979). *Commonwealth v. Soares*, 377 Mass. 461, 478-479, cert. denied, 444 U.S. 881 (1979). To establish a violation of the fair cross section requirement a defendant must show that: 1) the group allegedly discriminated against is a "distinctive" group in the community; 2) the group is not fairly and reasonably represented in the venires in relation to its proportion in the community; and 3) the underrepresentation is due to systematic exclusion of the group in the jury selection process. *Duren v. Missouri*, 439 U.S. at 364. *Commonwealth v. Bastarache*, 382 Mass. 86, 96-97 (1980). *Commonwealth v. Acen*, 396 Mass. 472, 478, appeal dismissed, 476 U.S. 1155 (1986). Once the defendant makes out a prima facie case, the State may rebut it if "a significant [S]tate interest" is "manifestly and primarily advanced by those aspects of the jury-selection process . . . that result in the disproportionate exclusion of a distinctive group." *Duren v. Missouri*, 439 U.S. at 367-368. *Commonwealth v. Bastarache*, 382 Mass. at 97-98. *Commonwealth v. Acen*, 396 Mass. at 478.

The objective sought to be furthered by the fair cross sec-

---

[1] The injunction had been issued by a judge of the Superior Court, different from the judge who tried the contempt, on October 28, 1991, in Planned Parenthood League of Massachusetts, Inc. *vs.* Operation Rescue, Middlesex Superior Court Civil Action No. 89-2487-F (October 28, 1991). The injunction prohibited the named defendants, including Manning, from: (1) obstructing access to any facility in the Commonwealth which provides abortion counseling or services; (2) committing any act of force or violence against persons entering or leaving the clinic; or (3) directing, conspiring with or aiding and abetting others who sought access to the clinic.

[2] The defendant asserts no claim under the State Constitution.

tion requirement is the "assurance of a diffused impartiality." *Commonwealth v. Soares,* 377 Mass. at 480. A jury need not mirror the population statistically to effectuate this goal. See *Taylor v. Louisiana,* 419 U.S. at 538; *Commonwealth v. Soares,* 377 Mass. at 481-482; *Barber v. Ponte,* 772 F.2d 982, 997 (1st Cir. 1985), cert. denied, 475 U.S. 1050 (1986). States retain "broad discretion" and "remain free to prescribe relevant qualifications for their jurors and to provide reasonable exemptions." *Taylor v. Louisiana,* 419 U.S. at 538. *Commonwealth v. Acen,* 396 Mass. at 479. "Because a true cross section is practically unobtainable, courts have tended to allow a fair degree of leeway in designating jurors so long as the [S]tate or community does not *actively* prevent people from serving or actively discriminate, and so long as the system is reasonably open to all" (emphasis original). *Barber v. Ponte,* 772 F.2d at 997.

In the instant case, the defendant challenges the constitutionality of G. L. c. 234A, § 4, which permits persons seventy and older to exempt themselves from jury service.[3] That exemption, Manning argues, deprives him of a fair pool of potential jurors. Under *Duren* v. *Missouri,* 439 U.S. at 364, Manning must first establish that individuals over seventy constitute a distinctive group, an initial hurdle that he fails to clear.

To qualify as "distinctive" for Sixth Amendment purposes, a group must: 1) be defined and limited by some clearly identifiable factor; 2) have a common thread or basic similarity in attitude, ideas, or experience running through it; and 3) possess a community of interest among the members of the group, such that the group's interests cannot be adequately represented if the group is excluded from the jury selection process. *Barber* v. *Ponte,* 772 F.2d at 997.

Whether persons over seventy constitute a distinctive group for purposes of the fair cross section requirement has not

---

[3]General Laws c. 234A, § 4, inserted by St. 1982, c. 298, § 1, states, in relevant part, ". . . any citizen of the United States who is a resident of the judicial district or who lives within the judicial district more than fifty percent of the time . . . shall be qualified to serve as a grand or trial juror in such judicial district unless one of the following grounds for disqualification applies: —

2. Such person is seventy years of age or older and indicates on the juror confirmation form an election not to perform juror service."

been squarely decided in Massachusetts, although several cases have rejected the idea of a cognizable classification based on age alone at an earlier end of the age spectrum, viz., young adults. *Commonwealth* v. *Bastarache,* 382 Mass. at 100. *Commonwealth* v. *Szczuka,* 391 Mass. 666, 671 (1984). *Commonwealth* v. *Barber,* 14 Mass. App. Ct. 1008, 1008 (1982). See also *Barber* v. *Ponte,* 772 F.2d at 1000.

Within an age group, variations in social background and life experience such as economic status, educational attainment, employment history, mental and physical health, marital, and parental status would produce marked differences in world outlook. *Barber* v. *Ponte,* 772 F.2d at 998-999. No evidence adduced by Manning establishes the necessary commonality of attitude, values, ideas, or interests among those over seventy years that delineate septuagenarians as a distinctive group. Even were we to assume the doubtful proposition that persons over seventy are more likely to hold conservative views,[4] Manning failed to show that such values are not represented, for example, by individuals in the sixty to sixty-nine age range, or by those aged seventy and older who elect not to exempt themselves from jury service. See *Silgay* v. *Peters,* 905 F.2d 986, 1011 (7th Cir. 1990), cert. denied, 498 U.S. 1110 (1991); *Brewer* v. *Nix,* 963 F.2d 1111, 1113 n.4 (8th Cir.), cert. denied, 506 U.S. 896 (1992). See the same reasoning, but applied to different age brackets in *Barber* v. *Ponte,* 772 F.2d at 998.

We are persuaded that the objective of achieving a fair and impartial jury is not thwarted, or even made more difficult to attain, by the self-exemption provision of G. L. c. 234A, § 4, second par., for persons over age seventy. The voluntary right conferred on those over seventy to be relieved of jury service is not irrational. First, it was not unreasonable for the Legislature to have determined that, after persons have been subject for fifty-two years to compulsory service on juries, their civic duty on that score has been discharged. Second, it would be discordant for judges, who by constitutional mandate must retire at age seventy, to declare unreasonable a legislative enactment that allows persons to be excused from jury service after they have attained the same age. We hold

---

[4]Notwithstanding the observation attributed to Winston Churchill that "[i]f you're not a liberal at twenty, you have no heart, and if you're not a conservative at forty, you have no head."

that the option conferred by G. L. c. 234A, § 4, second par., upon persons seventy years or older to excuse themselves from jury service does not violate the right to a petit jury selected from a fair cross section of the population.

Manning had on January 4, 1992, obstructed access to a women's clinic that, among other things, provided abortion counselling and services, thus squarely violating the injunction described in note 1, *supra*. He had been warned by the terms of the injunction that such a violation would be a criminal offense. In his criminal contempt trial, Manning sought to introduce evidence that would "explain" that his action was based on religious belief and justified also by the danger of the harm that might befall the unborn. The trial judge rightly excluded the evidence as irrelevant to the issue of contempt. Belief systems do not excuse acts that have lawfully been established to be criminal. *Commonwealth* v. *Nissenbaum*, 404 Mass. 575, 583 (1989). The right to obtain an abortion under certain circumstances is constitutionally protected and the defendant had been specifically enjoined from interfering with that right in the manner he did. As to the defendant's necessity defense, it is foreclosed by *Commonwealth* v. *Brogan*, 415 Mass. 169, 174-176 (1993).

*Judgment affirmed.*