154 P.3d 382

Charles R. STEWART,
Petitioner/Appellant,

v.

Hon. Michael CARROLL, Phoenix
Municipal Court, Respondent
Judge/Appellee,

and

Phoenix City Prosecutor's Office, Real
Party in Interest/Appellee.

No. 1 CA–CV 06–0240.

Court of Appeals of Arizona,
Division 1, Department E.

March 13, 2007.

Laurie A. Herman, Scottsdale, Attorney for Petitioner/Appellant.

Gary Verburg, Phoenix City Attorney By F. Tyler Rich, Assistant City Prosecutor, Phoenix, Attorneys for Real Party in Interest/Appellee.

## OPINION

NORRIS, Judge.

¶ 1 Appellant, Charles R. Stewart, appeals from the superior court's denial of relief from his special action petition challenging the constitutionality of provisions of a state statute allowing prospective jurors 75 and older to opt out of jury service and prohibiting the public disclosure of statements submitted to the courts by prospective jurors asking to be excused from jury service for "mental or physical" reasons. Arizona Revised Statutes (A.R.S.) §§ 21–202(C) and 21–202(B)(1)(c) (Supp.2006).[1] We hold that both provisions are constitutional, and therefore affirm the decision of the superior court.

1. We cite to the current version of the statute when no revisions material to the decision have occurred.

2. In October 2003, Stewart was cited for violating various state criminal statutes. The charges were dismissed without prejudice, but were re-filed in January 2005.

3. If the prospective juror does not have a physician, the prospective juror or his or her personal representative "shall provide" a sworn statement from a professional caregiver for the prospective juror that "explains the mental or physical condition that renders the prospective juror incapable of performing jury service." A.R.S. § 21–202(B)(1).

## FACTS AND PROCEDURAL HISTORY

¶ 2 In 2005, the Arizona Legislature revised the juror-exemption statute. *See* A.R.S. § 21–202; 2005 Ariz. Sess. Laws, ch. 74. The revised statute, passed as an emergency measure, became effective on April 13, 2005, and applied to Stewart's pending criminal trial in the City of Phoenix Municipal Court.[2]

¶ 3 Subsection (C) of the revised statute allows a person 75 or older to opt out of jury service ("opt-out provision"). In pertinent part, the opt-out provision states:

[A] prospective juror who is at least seventy-five years of age may submit a written statement to the court requesting that the person be excused from service.... On receipt of the request, the judge or jury commissioner shall excuse the prospective juror from service.

A.R.S. § 21–202(C); 2005 Ariz. Sess. Laws, ch. 74, § 1.

¶ 4 Subsection (B)(1) of the statute allows a person to be excused temporarily from jury service if the judge or jury commissioner finds the prospective juror "has a mental or physical condition that causes the juror to be incapable of performing jury service." A.R.S. § 21–202(B)(1). To be excused from jury service on this basis, the prospective juror (or his or her personal representative) "shall provide" the court or jury commissioner with a statement ("medical statement") from a physician licensed under Title 32[3] that "explains an existing mental or physical condition that renders the person unfit for jury service."[4] *Id.* "These documents are

4. The statute contains a detailed description of the information that must be provided in the statement submitted pursuant to subsection (B)(1). The statement must be in writing and must contain a description and duration of any mobility restrictions; the specific symptoms that make the prospective juror mentally or physically unfit for jury service and their duration; the employment status of the prospective juror; and the printed name, signature, professional license number, if applicable, area of specialty, and contact information of the authorizing physician or professional caregiver.

not public records and shall not be disclosed to the general public." A.R.S. § 21–202(B)(1)(c) ("confidentiality provision").

¶ 5 On May 4, 2005, Stewart asked the municipal court to declare subsection (C), the opt-out provision, and subsection (B)(1)(c), the confidentiality provision, unconstitutional under various provisions of the Arizona Constitution. The court denied the motion. Stewart then filed a petition requesting special action relief in the superior court, and again argued the opt-out and confidentiality provisions were unconstitutional. The superior court accepted jurisdiction, but denied relief.

¶ 6 Stewart timely appealed. We have jurisdiction pursuant to A.R.S. §§ 22–375(A) (2002) and 12–120.21(A)(1) (2003).

## DISCUSSION

I. *Constitutionality of the Opt–Out Provision*

■ ¶ 7 On appeal, Stewart argues, as he did in the municipal and superior courts, that the opt-out provision set out in A.R.S. § 21–202(C) violates his Arizona constitutional rights to due process and a fair jury trial. Ariz. Const. art. 2, § 4 (due process); Ariz. Const. art. 2, §§ 23–24 (right to impartial jury). "We review the constitutionality of a statute de novo." *Town of Gilbert v. Maricopa County,* 213 Ariz. 241, 245, ¶ 11, 141 P.3d 416, 420 (App.2006); *Norgord v. State ex rel. Berning,* 201 Ariz. 228, 230, ¶ 4, 33 P.3d 1166, 1168 (App.2001).

■ ¶ 8 In *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), the United States Supreme Court set out the requirements for establishing a prima facie violation of a defendant's federal constitutional Sixth Amendment right to a jury selected from a fair cross-section of the community.[5] The court stated:

> the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the

representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Id.* at 364, 99 S.Ct. 664.

¶ 9 Acknowledging he would have difficulty demonstrating *Duren's* second requirement, Stewart asserts we should, in construing the Arizona constitutional provisions at issue here, only require a defendant to prove the first and third elements of the *Duren* test. Thus, he essentially asks us to construe Arizona's due-process and jury-trial constitutional clauses as affording greater protections to criminal defendants than the analogous provisions of the federal constitution.

¶ 10 Such a construction would be inconsistent with cases decided by the Arizona Supreme Court. In *State v. Casey,* 205 Ariz. 359, 71 P.3d 351 (2003), the supreme court explained that the federal and state due-process clauses "contain nearly identical language and protect the same interests." *Id.* at 362, ¶ 11, 71 P.3d at 354. It went on to note, "[a]lthough this court, when interpreting a state constitutional provision, is not bound by the Supreme Court's interpretation of a federal constitutional clause, those interpretations have 'great weight' in accomplishing the desired uniformity between the clauses." *Id. See also State v. Carlson,* 202 Ariz. 570, 577, ¶ 18, 48 P.3d 1180, 1187 (2002)("Arizona's right to an impartial jury is no broader than the Sixth Amendment"). Stewart offers no compelling reason for us to depart from the federal standard. Therefore, consistent with these and with other Arizona cases that have relied on Duren to analyze fair-cross-section arguments, we apply the Duren test here. *See, e.g., State v. Murray,* 184 Ariz. 9, 23, 906 P.2d 542, 556 (1995); *State v. Bernal,* 137 Ariz. 421, 425, 671 P.2d

---

**5.** The Sixth Amendment right to a jury trial is binding on the states by virtue of the Fourteenth Amendment. *Duncan v. Louisiana,* 391 U.S. 145, 149, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). The United States Supreme Court has "unambig-uously declared that the American concept of the jury trial contemplates a jury drawn from a fair cross section of the community." *Taylor v. Louisiana,* 419 U.S. 522, 527, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).

399, 403 (1983); *State v. Sanderson*, 182 Ariz. 534, 538, 898 P.2d 483, 487 (App.1995).

¶ 11 The superior court held Stewart had failed to meet the first requirement of the *Duren* test—the distinctive group requirement—and, thus, had failed to show a prima facie violation of his state constitutional rights. We agree.

¶ 12 The United States Supreme Court has not precisely defined what constitutes a "distinctive group" for purposes of the fair-cross-section requirement of the Sixth Amendment. Instead, it has linked the "concept of 'distinctiveness'" to the purposes of the fair-cross-section requirement. *Lockhart v. McCree*, 476 U.S. 162, 174, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986). In *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), the Court explained this requirement guards against the exercise of arbitrary power, insuring that the "commonsense judgment of the community" will act as a "hedge against the overzealous or mistaken prosecutor," preserving "public confidence in the fairness of the criminal justice system," and implementing the belief that "sharing in the administration of justice is a phase of civic responsibility." *Id.* at 530–31, 95 S.Ct. 692.

¶ 13 Stewart never explains how allowing prospective jurors 75 or older to opt out of jury service contravenes the purposes of the fair-cross-section requirement. Time on earth and life experience go hand-in-hand. But, although citizens 75 or older have more time on earth and more life experiences they can draw upon during jury service, they do not necessarily share the same or similar experiences, views, histories, viewpoints, attitudes, values, or interests. Other than age, Stewart has presented no evidence [6] that citizens 75 or over constitute a distinct group, such that allowing them to opt out of jury service would deprive a criminal defendant of the commonsense judgment of the community, would give rise to the appearance of unfairness, or would interfere with the responsibility (and right) all Americans share in ensuring the fair administration of justice.

¶ 14 In *Silagy v. Peters*, 905 F.2d 986 (7th Cir.1990), the defendant raised a Sixth Amendment challenge to the exclusion of jurors over 70. There, contrary to statutory requirements, the official responsible for compiling the jury venire excluded all individuals who had indicated on their jury questionnaires that they were 70 or older. Although the court found the official had violated state law in doing so, it rejected the defendant's argument—similar to Stewart's argument here—that the individuals excluded constituted a "distinctive group" for Sixth Amendment purposes:

> That persons over the age of seventy do not constitute a "distinctive group" for purposes of the sixth amendment is further supported by an analysis of the purposes underlying the fair-cross-section requirement. First, we reject Petitioner's assertion that the exemption of persons over the age of seventy somehow threatens the extent to which the "commonsense judgment of the community" will be present in the impanelled jury. We do not question the generalized perception that older Americans do bring a unique perspective to jury proceedings. Petitioner, however, has failed to demonstrate that this perspective will not be adequately represented by those aged sixty and over who were represented on the venire wheel. Nor do we believe the exemption of elder American citizens from jury service sub-

6. Whether a group is distinctive for purposes of fair-cross-section analysis under the Sixth Amendment presents a question of fact. *See Willis v. Zant*, 720 F.2d 1212, 1217 (11th Cir. 1983). "Like all questions of fact, however, the failure to meet the basic burden of proof with respect to that question will allow the court to rule as a matter of law." *State v. Pelican*, 154 Vt. 496, 580 A.2d 942, 947 (1990); *accord Orme School v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990)(summary judgment or directed verdict should be granted "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense.")

Here, because Stewart failed to present any evidence that prospective jurors 75 or older constituted a distinctive group, the superior court correctly ruled as a matter of law that Stewart had failed to show a prima facie violation of the fair-cross-section requirement. Our ruling in this case should not be construed as holding that an age-defined group can never be found distinctive.

stantially jeopardizes the public's perception of the fairness of the criminal justice system. Is such an exemption perceived as being any more unfair than the outright exclusion of persons between the ages of 18 and 21? Finally, while we recognize that the exclusion of this class of jurors implicated the concern of the sixth amendment that all persons continue to participate in the administration of justice, this unfortunate fact by itself cannot establish a fair-cross-section violation. The ultimate concern of the fair-cross-section requirement is to ensure that each criminal defendant be afforded his sixth amendment right to an "impartial jury." We do not believe that the exclusion of persons over the age of seventy jeopardized that right.

*Id.* at 1011 (internal citation omitted).

¶ 15 Other state and federal courts that have considered the fair-cross-section requirement vis-à-vis age have recognized that for a group to be distinctive under the Sixth Amendment, it must be defined and limited by some clearly identifiable factor; by a common thread or basic similarity in attitude, ideas, or experiences running through the group; or by a community of interests among the members of the group, such that the group's interests cannot be adequately represented if the group is excluded from the jury selection process. *Barber v. Ponte,* 772 F.2d 982, 997 (1st Cir.1985)(en banc); *Willis v. Zant,* 720 F.2d 1212, 1216 (11th Cir.1983), *cert. denied,* 467 U.S. 1256 (1984); *Brown v. Harris,* 666 F.2d 782, 783–84 (2nd Cir.1981), *cert. denied,* 456 U.S. 948, 102 S.Ct. 2017, 72 L.Ed.2d 472 (1982); *Commonwealth v. Manning,* 41 Mass.App.Ct. 696, 673 N.E.2d 73, 75 (1996); *State v. Pelican,* 154 Vt. 496, 580 A.2d 942, 947 (1990).

¶ 16 Although age is a clearly identifiable factor, these courts have recognized that age by itself does not generate similarity in attitudes and ideas, or demonstrate a commonality in interests that cannot be represented by citizens of a different age. As far as we can determine, every court that has considered a fair-cross-section Sixth Amendment challenge to the type of age-based jury-exemption provision presented here has rejected it. *Brewer v. Nix,* 963 F.2d 1111 (8th Cir.1992) (Iowa law); *Commonwealth v. Manning,* 41 Mass.App.Ct. 696, 673 N.E.2d 73 (1996); *State v. Rogers,* 355 N.C. 420, 562 S.E.2d 859 (2002); *Sellers v. State,* 809 P.2d 676 (Okla. Crim.App.1991); *State v. Blunt,* 708 S.W.2d 415 (Tenn.Crim.App.1985); *Weaver v. State,* 823 S.W.2d 371 (Tex.Ct.App.1992).

¶ 17 We agree with the superior court: Stewart failed to raise a prima facie violation of the fair-cross-section requirement. Section 21–202(C) does not violate the due-process and fair-jury-trial provisions of the Arizona Constitution.

## II. Constitutionality of the Confidentiality Provision

■ ¶ 18 Stewart also argues the confidentiality provision violates his "state open justice rights—Article 2, § 11."[7] We disagree. Article 2, § 11 of our state constitution does not require a prospective juror's medical statements to be public.

■ ¶ 19 The Arizona Constitution requires that "[j]ustice in all cases shall be administered openly, and without unnecessary delay." Ariz. Const. art. 2, § 11. This clause "has been aptly characterized as an 'open courts' and 'speedy trial' provision. The 'open courts' provision essentially commands public judicial proceedings." *State v. Ramirez,* 178 Ariz. 116, 127, 871 P.2d 237, 248 (1994).

■ ¶ 20 The legislature's decision to maintain the confidentiality of medical statements submitted by prospective jurors does not infringe the constitutional requirement of "public judicial proceedings"; rather, it accommodates legitimate personal privacy rights. Individuals who are called for jury duty do not forfeit their privacy rights when they are called for jury duty. As a matter of policy, we wish to encourage jury service. Requiring prospective jurors to run the risk

---

7. In passing, Stewart argues the confidentiality provision violates his "due process rights (5th and 14th Amendments; Article 2, § 4)." This cursory reference to due process is insufficient to constitute an issue on appeal. *See AMERCO v. Shoen,* 184 Ariz. 150, 154 n. 4, 907 P.2d 536, 540 n. 4 (App.1995). Accordingly, we do not address this argument.

of having their private mental or physical conditions made public hardly encourages jury service. Further, as our supreme court has recognized, the open-courts requirement "does not guarantee a defendant access to information that he or she desires. Any constitutional right to this information must be found elsewhere." *Id.* The confidentiality provision does not violate Article 2, § 11 of the Arizona Constitution.

## CONCLUSION

¶ 21 For the foregoing reasons, the superior court correctly rejected Stewart's constitutional challenges to the opt-out and confidentiality provisions of the Arizona juror exemption statute.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge and DIANE M. JOHNSEN, Judge.

